Richard B. SUNDAY, Appellant

v.

Paul J. MADIGAN, Warden, United States Penitentiary, Alcatraz, California, Appellee.

No. 17494.

United States Court of Appeals Ninth Circuit.

March 30, 1962.

Richard B. Sunday, appellant, in pro. per.

Cecil F. Poole, U. S. Atty., and John Kaplan Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY and DUNIWAY, Circuit Judges, and SOLOMON, District Judge.

HAMLEY, Circuit Judge.

This is an appeal from a district court order denying an application for a writ of habeas corpus. The appellant, Richard B. Sunday, is in federal custody at the United States Penitentiary, Alcatraz, California. He is there serving a sentence imposed on June 21, 1951, following his conviction in Korea by a general court-martial of a violation of Article 120 (rape), Uniform Code of Military Justice, 10 U.S.C., § 920.[1]

1. Sunday was sentenced to dishonorable discharge and to confinement for life, no place of confinement being specified. On January 30, 1952, the period of confine-ment was reduced to twenty-five years. In his application Sunday alleges that it was further reduced to twenty-one years.

On this appeal Sunday contends that: (1) Article 120 was not in effect in Korea, where the offense was committed, until 2:00 P.M., May 31, 1951, Korea standard time; (2) the general court-martial made no finding as to when the offense was committed and the Board of Review which found that the offense was committed after 2:00 P.M. on that day, was without authority to make findings of fact; (3) there was no substantial evidence to support the finding; and (4) the district court should have held a plenary hearing to permit appellant to testify as to the time of day the offense was committed.

On the afternoon of May 31, 1951, while Sunday was serving as a private first class in the United States Army in Korea, he raped a Korean woman. A general court-martial was convened at Hoengsong, Korea for the trial of Sunday and his accomplice. The two soldiers were charged with a violation of Article 120,[2] and also a violation of Article of War 92 (rape), 10 U.S.C., § 1564 (1946 edition).

The reason the two soldiers were charged with the violation of both articles was that a doubt existed in the mind of the charging officer as to which was in effect in Korea at the time the offense was committed.

Section 5, Part B, of the Act of May 5, 1950, enacting the Uniform Code of Military Justice, of which Article 120 is a part, provided that it should become effective on the last day of the twelfth month after approval of the Act. The legislation was approved on May 5, 1950, thereby establishing the effective date to be May 31, 1951. If, under this provision, the Act became effective in Korea at midnight on the night of May 30–31, 1951, Korean standard time, it was concededly in effect when the offense was committed in Korea on the afternoon of May 31.

But if the Act did not become effective in Korea until it became effective in the United States, a determination as to the time of day the offense was committed becomes necessary. Korean time is fourteen hours faster than Eastern standard time, so that when May 31, 1951 began in Korea, it was only 10:00 A.M., May 30, 1951 in Washington, D. C. When May 31, 1951 began in Washington, D. C., it was already 2:00 P.M. on that day in Korea, Korean time.

If the offense was committed on or after 2:00 P.M. May 31, 1951, Korean standard time, there would be no problem concerning time since, even under appellant's theory, Article 120 was then in effect in Korea. But if the offense was committed before 2:00 P.M., Korean time, and the Act did not become effective in Korea until 2:00 P.M., Korean time, Article 120 of the Uniform Code would be ex post facto under Article I, section 9 of the Constitution as to that offense and the conviction could not stand.

In dealing with the problem the general court-martial did not attempt to fix the time of day the offense was committed, nor did it definitely decide what time of day, Korean time, Article 120 became effective in Korea. Instead, and in express recognition of its doubt as to the time the article became effective, the general court-martial found Sunday guilty, alternatively, under Article 120 or its predecessor, Article of War 92.[3]

2. The Uniform Code of Military Justice was enacted by the Act of May 5, 1950, Public Law 506, 81st Congress, c. 169, section 1, 64 Stat. 108, 50 U.S.C.A. §§ 55–736 (1952 edition). The Code was codified and re-enacted into law without any change by the Act of August 10, 1956, 70A Stat. 36–78, 10 U.S.C., §§ 801–940. All references to the Uniform Code of Military Justice will hereafter be cited under 10 U.S.C., §§ 801–940.

3. After finding Sunday guilty under Article 120 the court-martial stated:
"The court has taken into consideration there is some doubt as to whether the provisions of the Manual for Courts-Martial, United States, 1951, was in effect on 31 May 1951, due to the difference

In due course the matter came before the Board of Review in the office of the Judge Advocate General, pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866. That Board determined that the Uniform Code was in effect in Korea beginning at 12:00 midnight on the night of May 30–31, 1951, Korean standard time. The Board therefore held that Article 120 was in effect when the offense was committed without regard to whether the rape occurred before or after 2:00 P.M. Korean time. The Board concluded that the charge and specification under Article of War 92 were inappropriate, and the findings of guilty thereof were not correct in law. The findings of guilty under Article 120 were approved.[4]

■ The limited function of civil courts in habeas corpus proceedings involving military convictions is to determine whether the court-martial had jurisdiction of the person accused and the offense charged, and whether it acted within its lawful powers. Hiatt v. Brown, 339 U.S. 103, 110–111, 70 S.Ct. 495, 94 L.Ed. 691. This may include an inquiry as to whether the military have given fair consideration to each of the petitioner's claims. But once it has been concluded by the civil courts that the military had jurisdiction and dealt fully and fairly with all such claims, it is not open to such courts to grant the writ simply to re-evaluate the evidence. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508.

■ If, as appellant contends, Article 120 of the Uniform Code was not in effect in Korea when the offense was committed, the general court-martial was without jurisdiction to try him for a violation of that article, and to convict him of such violation. Likewise, under these circumstances, the Board of Review was without jurisdiction to approve such conviction.[5] It follows that at least the question of whether Article 120 of the Uniform Code was in effect in Korea beginning at midnight on the night of May 30–31, 1951, Korean standard time, may be inquired into in this habeas corpus proceeding.[6]

The enactment of May 5, 1950, contains no express provision indicating that the Uniform Code of Military Justice was to become effective outside the United States at 12:00 A.M. in each time zone on the day when, under the terms of the statute, the Act became effective. Nor is there any general or special statute establishing the rule in this regard with reference to the Uniform Code or any

in time between Korea and Washington, D. C., and in the event the Manual for Courts-Martial, 1951, was not in effect then, finds you:

Of the Charge under Article of War 92 and accompanying Specification, Guilty."

4. The Board also found that the offense was committed "(S)ometime between 1400 and 1630 hours on 31 May 1951 * * *" If the Board was authorized to enter such a finding, and if the finding is supported by substantial evidence, or if, in these respects, this finding is not subject to review in this habeas corpus proceeding, then, for the purposes of this case, Article 120 was in effect in Korea when the offense was committed even if the Uniform Code did not become effective there until 2:00 P.M. Korean standard time. In view of our disposition of the question as to when Article 120 became effective in Korea, we do not reach these further questions.

5. In that event it might be appropriate to require a reopening of the military proceedings to reinstate the general court-martial's alternative conviction under Article of War 92. Assuming that such a course would be proper it does not mean that, in the long run, appellant can gain nothing by this habeas corpus proceeding. If the conviction under Article of War 92 may properly be reinstated, appellant would at least be entitled to a transfer from Alcatraz Penitentiary to a disciplinary barracks or other non-penitentiary type institution. See Article of War 42, 10 U.S.C. § 1513 (1946 edition); Green v. Schilder, 10 Cir., 162 F. 2d 803; Lee v. Madigan, D.C., 164 F. Supp. 676.

6. In addition to arguing the merits of this question, appellant also asks us to certify it to the Supreme Court pursuant to 28 U.S.C. § 1254(3). We decline to do so.

other statute having application throughout the world.

■ There is, however, a general statute which establishes the rule to be followed in this regard, insofar as application within the United States is concerned. This statute, 15 U.S.C.A. § 262, reads as follows:

> " * * * In all statutes, orders, rules, and regulations relating to the time of performance of any act by any officer or department of the United States, whether in the legislative, executive, or judicial branches of the Government, or relating to the time within which any rights shall accrue or determine, or within which any act shall or shall not be performed by any person subject to the jurisdiction of the United States, it shall be understood and intended that the time shall be the United States standard time of the zone within which the act is to be performed."

In the absence of circumstances pointing to a different conclusion, this statute manifests a general congressional intent that zoned variations in time shall be observed in determining the time when statutory rights or liabilities accrue. While the statute is not applicable by its terms to time zones outside the United States, we perceive no reason why Congress should have a different intent with regard to extra-United States zones. With particular reference to the Uniform Code of Military Justice there are cogent reasons why Congress would want the same rule to apply world-wide.

At the time the Uniform Code of Military Justice was enacted in 1951, armed forces of the United States were stationed in all parts of the world. Practical considerations in implementing the notice requirements of the Uniform Code would be served by recognizing the respective time zones throughout the world as determinative with regard to acts committed within each such zone. As the trial court pointed out, persons resident in each zone can most readily determine the effective time of a statute, if fixed in terms of the time in that zone.

Appellant calls attention to the obvious fact that when May 31, 1951 began in Korea, it was still May 30, 1951 in the United States. He argues that it is unreasonable to assume that Congress intended the Uniform Code to be effective anywhere outside of the United States before it was effective within the United States. To avoid such a result, he advocates the rule that a statute of the United States becomes effective outside of the United States at the local standard time which exists at the moment the statute becomes effective in the District of Columbia. Thus the Uniform Code would become effective at 2:00 P.M. May 31, 1951, Korean standard time, because at that moment it was midnight on the night of May 30–31 in the District of Columbia.

But such a rule would only partially overcome what appellant regards as an anomalous situation. It is true that the effective time in Korea would then not precede the effective time in the District of Columbia, but it would still be three hours in advance of the effective time in San Francisco, and five hours in advance of the effective time in Alaska and Hawaii.[7]

This illustrates the fact that what appellant regards as an anomaly is but an unavoidable by-product of the circumstance that the international date line is located at the 180th meridian in the Pacific Ocean, rather than at the District of Columbia.[8] It also demonstrates the

---

7. If such a rule is to be applied in Korea it must also be applied in Guam, which is under the jurisdiction of the United States. Since Guam time is fifteen hours faster than Eastern standard time, it was 3:00 P.M. May 31 in Guam when the Uniform Code became effective at midnight on the night of May 30–31 in the District of Columbia. But at that time it was only 9:00 P.M. May 30 in San Francisco, and 7:00 P.M. May 30 in Hawaii.

8. If the international date line were located at the District of Columbia then

futility of trying to overcome appellant's "anomaly" by framing a rule under which the application of a law outside of the United States is accelerated or deferred to conform to the time of application in the District of Columbia.

There are apparently no court decisions in the United States bearing upon this question. There is, however, a remarkably similar British case, Regina v. Logan (1957) 2 Q.B. 589.

In that case the appellants, who were British soldiers stationed at Hong Kong, were jointly charged with an assault, in violation of section 70 of the British Army Act, 1955. It was charged that the assault occurred at Hong Kong on January 1, 1957, at about 2:30 A.M., Hong Kong standard time. As Hong Kong time is eight hours in advance of English time, when it was 2:30 A.M. January 1, 1957 in Hong Kong it was only 6:30 P.M. on December 31, 1956 by English time. Since the Army Act, 1955 had not then come into operation in England, appellants argued that it was not then in effect in Hong Kong.

The court, speaking through Lord Goddard, C. J., rejected the contention, holding that if an Act is said to come into force on January 1, it comes into force on the day which is January 1 in the particular place where the Act is to be applied. The court held that it was immaterial that it became January 1 in Hong Kong a few hours before the clock actually showed January 1 in London.

We conclude that the Uniform Code of Military Justice became effective in Korea at midnight on the night of May 30–31, 1951, Korean standard time.

Article 120 was therefore not applied ex post facto as to appellant, regardless of the time of day, Korean time, the offense was committed.[9] The general court-martial therefore had jurisdiction to try appellant, and convict him, on a charge of violating Article 120 of that Code. The conclusion just stated makes it unnecessary to consider appellant's other contentions.

The judgment is affirmed.

---

each calendar day, and every hour of every day, would begin first in the District of Columbia before it began anywhere else in the world. No act of Congress could then become effective in any part of the world outside of the United States at an absolute moment in time prior to its effective time in any part of the United States.

9. We do not mean to imply that circumstances could not be stated, even under the rule announced in this opinion, which would present problems concerning the ex post facto application of statutes in time zones which are in advance of Eastern standard time. It is sufficient to say that such problems are not presented where, as here, the contingency upon which the effective time of the statute is made to turn (here the approval of the legislation), is fulfilled before the moment in absolute time when it is sought to apply the statute locally.