**Gilbert Esco ANGLE, Appellant,**

v.

**Melvin LAIRD, U. S. Secretary of Defense, Appellee.**

**No. 334-69.**

United States Court of Appeals,
Tenth Circuit.

Aug. 13, 1970.

Harry Joseph Atwell, Englewood, Colo., for appellant.

Michael A. Katz, Captain, JAGC, Washington, D. C. (Robert J. Roth, U. S. Atty., and Edward H. Funston, Asst. U. S. Atty., Topeka, Kan., and Arnold I. Melnick, Lieutenant Colonel, JAGC, Washington, D. C., on the brief), for appellee.

Before MURRAH, SETH and HOLLOWAY, Circuit Judges.

MURRAH, Circuit Judge.

This appeal involves the efforts of appellant Angle to change his World War II Army discharge from dishonorable to honorable. The specific question is his right to a writ in the nature of mandamus compelling the Secretary of Defense to make the requested change in his records, 28 U.S.C. § 1361. See Smith v. McNamara, 395 F.2d 896 (10th Cir. 1968); Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965). He contends the Secretary is under an enforceable duty to make the change because the court-martial which resulted in his dishonorable discharge was constitutionally void.[1]

Angle sought § 1361 relief in the District Court after the Army Board for the Correction of Military Records denied his request for relief under 10 U.S. C. § 1552 in 1966.[2] The first petition was dismissed on appeal for lack of jurisdiction resulting from improper serv-

1. A 1948 court-martial found Angle guilty of larceny of three dozen eggs, military property with a value of $1.50, and assault with intent to do bodily harm upon the corporal who reported the missing eggs.

2. 10 U.S.C. § 1552(a) provides:
"The Secretary of a military department, * * * acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice."

ice, Smith v. McNamara, supra at 898. The trial court dismissed the present petition on a finding that Angle had bypassed remedies available from 1949 to 1952 under Article 53, Articles of War, and Article 140, Uniform Code of Military Justice, both of which empowered the Army Judge Advocate General to grant suitable relief for good cause shown in World War II courts-martial.[3]

 We agree with the trial court that the doctrine of deliberate bypass or waiver, Fay v. Noia, 372 U.S. 391, 438–440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), as well as that of exhaustion, Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950), limits collateral review of military convictions and confinements as it does collateral review of civilian confinements. See Williams v. Heritage, 323 F.2d 731 (5th Cir. 1963) (suggesting this result in habeas corpus). These complementary doctrines encourage the full use of state or military remedies before resort to the federal courts for collateral review. In either context one challenging the validity of his restraint must exhaust all available state or military remedies before seeking federal collateral relief.[4] But failure to use state or military remedies unavailable at the time collateral relief is sought bars any such relief only if the failure was a deliberate bypassing of those remedies. See Fay v. Noia, supra, 372 U.S. at 426–440, 83 S.Ct. 822.

 The test for such deliberate bypass or waiver is "an awareness of the availability of state [or military] remedy and a decision not to use it made by the petitioner himself." Watkins v. Crouse, 344 F.2d 927, 929 (10th Cir. 1965). And see Patterson v. Brown, 393 F.2d 733 (10th Cir. 1968); Bradley v. Crouse, 373 F.2d 11 (10th Cir. 1967). Making application of this test to the present case, we conclude that Angle's failure to use his remedies under the Articles of War and Uniform Code of Military Justice was not a deliberate bypassing of those remedies. The government relies on a letter written by Angle in 1966 for submission to the Army Board which states that during his confinement he "made up [his] mind to serve [his] time and forget about all this mess." In a related letter, however, Angle says that his court-martial counsel told him there was no way to appeal his court-martial. These confused statements fail to establish that Angle was aware of the remedies under the Articles of War and Uniform Code of Military Justice, and we cannot assume such knowledge. Fay v. Noia, supra, 372 U.S. at 438–440, 83 S.Ct. 822.

 do think, however, that the failure of Angle's counsel to make appropriate objections at the court-martial was a deliberate bypass or waiver of his right of confrontation and cross-examination. His initial claim in that respect involves the admission of the deposition of a witness to the assault who

---

3. Angle says the effect of the District Court's decision is to allow the Army Board to deny relief under 10 U.S.C. § 1552 for deliberate bypass of military remedies no longer available. We reject this interpretation of the court's decision. There is no suggestion in the record that the Board itself denied relief on a deliberate bypass or waiver theory; the court simply concluded that its own collateral review of the court-martial was barred by Angle's deliberate bypass of military remedies. The District Court's decision is not in conflict with Van Bourg v. Nitze, 128 U.S.App.D.C. 301, 388 F.2d 557 (1967), which held that the Navy Discharge Review Board could not, in violation of its own regulations, deny an applicant a hearing on the apparent theory that he had waived that right by consenting to his discharge twelve years before.

4. Angle has no presently available remedies to exhaust; he need not apply to the United States Court of Military Appeals for relief under the All Writs Act, 28 U.S.C. § 1651, since that court has no jurisdiction over Angle's 1948 court-martial. Noyd v. Bond, supra, 395 U.S. at 695, 89 S.Ct. 1876 n. 7; United States v. Homcy, 5 Crim.L.Rep. 2448 (U.S.C. M.A. Aug. 15, 1969).

left the Army before Angle's court-martial. The deposition questions were drawn up before the appointment of the defense counsel who represented Angle at the court-martial and Angle denied that the fourteen cross-interrogatories in the deposition were the work of either him or his counsel.

■ At the time the deposition was admitted, however, Angle's counsel stated that he had no objection to it. In the absence of some showing of misapprehension concerning the source of the cross-interrogatories and in view of their effective probing of the deposition testimony, we must assume that the failure to object was intelligently, if not strategically, deliberate and worked a waiver of Angle's rights. Cf. Henry v. Mississippi, 379 U.S. 443, 451–453, 85 S.Ct. 564, 13 L. Ed.2d 408 (1965); United States ex rel. La Molinare v. Duggan, 415 F.2d 730 (3d Cir. 1969); Mize v. Crouse, 399 F. 2d 593 (10th Cir. 1968); Pope v. Swenson, 395 F.2d 321 (8th Cir. 1968); Easley v. Hunter, 209 F.2d 483, 485–486 (10th Cir. 1953). In any event, we cannot say, in these collateral proceedings, that the admission of this deposition, with the cross-interrogatories, operated to deprive the petitioner of his fundamental right of confrontation and cross-examination.

■ Angle also argues that his right of confrontation and cross-examination was compromised by a stipulation concerning the testimony expected from a Lieutenant Barker, who was transferred prior to his court-martial. His counsel voluntarily entered into that stipulation, however, and court-martial counsel's affidavit shows that the decision was a part of trial strategy. Lieutenant Barker's pretrial statement, if believed, was strong evidence of Angle's guilt of both charges. Angle's counsel "purposely did not call Lt. Barker as [he] did not want [him] to magnify what was otherwise apparently a squabble between two soldiers, especially in view of Private

Angle's prior courts-martial." Counsel's decision, made as a part of trial strategy and in open court in Angle's presence, is a manifest waiver of any claimed confrontation right. Cf. cases cited, supra.

■ The contention that Angle was denied counsel under the sixth amendment remains for consideration.[5] In Smith v. McNamara, supra at 899, we set out the test to be applied to claims like this by equating the duty of the Secretary of a military department to change discharges with the duty of a District Court to grant habeas corpus relief from military confinement. If "the 'conviction was the product of a court-martial procedure so fundamentally unfair that, upon a proper petition, a district court at the place of incarceration would have been obliged to grant a writ of habeas corpus,'" then the Secretary would be under a duty to grant relief, enforceable under 28 U.S.C. § 1361. This brings us to the final question, "whether the representation afforded him [at his court-martial] complied with the fundamental right of due process, i. e. a full and fair hearing where liberty is at stake." Smith v. McNamara, supra at 899.

■ Angle bases his claim on the fact that he was prosecuted by a lawyer but defended by a non-lawyer. It is established, however, that in courts-martial under the Articles of War "a commissioned officer admitted to practice before courts-martial was a competent attorney, within the purview of the sixth amendment, even in the adversary and trial aspects of the military proceedings." Harris v. Ciccone, 417 F.2d 479, 484 (8th Cir. 1969); Smith v. McNamara, supra; Altmayer v. Sanford, 148 F.2d 161, 162 (5th Cir. 1945); Romero v. Squier, 133 F.2d 528, 531–532 (9th Cir. 1943); Smith v. Hiatt, 170 F. 2d 61, 64 (3d Cir. 1948), rev'd on other grounds sub nom. Humphrey v. Smith, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986. And here, as in Smith v. McNamara,

---

5. The government does not argue that there was any deliberate bypass as to this claim, although it is not clear that the claim was raised in the military system.

896

there are additional factors suggesting the competence of Angle's counsel. He had attended military law classes and also taught a criminal law class. He had previous experience in court-martial litigation, having participated in approximately 300 summary and general courts-martial before Angle's.

The contention that defense counsel's representation failed to meet constitutional standards is also without merit. Success is not the test of effective representation and the record does not support the conclusion that the court-martial was "a mockery, a sham or a farce." Johnson v. United States, 380 F.2d 810, 812 (10th Cir. 1967). And see Linebarger v. Oklahoma, 404 F.2d 1092, 1095–1096 (10th Cir. 1968); Mize v. Crouse, supra, at 596; Tafoya v. United States, 386 F.2d 537, 539–540 (10th Cir. 1967); Kienlen v. United States, 379 F. 2d 20, 28–29 (10th Cir. 1967). Accordingly, the judgment of the District Court is affirmed.