490 F.2d 358
 Robert M. DAIGLE, and Terry Lee Crosby, Individually and on
behalf of all persons similarly situated,
Petitioners-Appellees, and Jack Nazimek
et al., Petitioners,
Intervenors-Appellees,
v.
Honorable John E. WARNER, Individually and in his capacity
as Secretary of the Navy, et al., Respondents-Appellants.
 No. 72-2801.
 United States Court of Appeals, Ninth Circuit.
 Oct. 24, 1973,
Oct; 24, 1973, As Amended on Denial of Rehearing Jan. 29, 1974.
 
 Lt. E. Alan Hechtkopf, Staff Atty., Judge Advocate General's Office, Washington, D.C. (argued), Robert K. Fukuda, U.S. Atty., Honolulu, Hawaii, James L. Browning, Jr., U.S. Atty., Chester G. Moore, III, Asst. U.S. Atty., San Francisco, Cal., William J. Eggers, III, Asst. U.S. Atty., Honolulu, Hawaii, forrespondents-appellants.
 Stanley E. Levin, Waianae, Hawaii (argued), Paul Alston, Legal Aid Society, Waianae, Hawaii, John S. Edmunds, Mattoch, Edmunds, Kemper & Brown, Honolulu, Hawaii, David F. Addlestone, Lawyers Military Defense Committee, Washington, D.C., for petitioners-appellees.
 Before KOELSCH, WRIGHT and TRASK, Circuit Judges.
 OPINION
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 In this habeas corpus proceeding, petitioners attack their convictions at summary courts-martial on the basis that they were not afforded representation by counsel. We must decide whether the Sixth Amendment's guarantee of counsel in criminal prosecutions, as interpreted and applied in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972),[1] is applicable to trials before summary courts-martial. We hold that it is not. We must also decide whether the Fifth Amendment's guarantee of due process of law requires the military to appoint counsel in every case in which the defendant is sentenced to confinement. We hold that it does not. We therefore reverse the judgment of the district court, 348 F.Supp. 1074 (D.Haw.1972), granting petitioners writs of habeas corpus.1a
 
 I. The Facts
 
 2
 There were six petitioners before the district court, including the four intervenors. Each was an enlisted member of the Marine Corps stationed in Hawaii.
 
 
 3
 In June, 1972, Petitioner Daigle was informed that he would be tried by a summary court-martial on charges of disobeying an order and possession of two identification cards with intent to deceive. He requested information concerning the assistance of counsel and was advised that he could consult with a legal officer prior to the court-martial but did not have the right to the assistance of military counsel during the proceedings.
 
 
 4
 Daigle consulted with a member of the Judge Advocate General's Corps prior to his trial, and was advised of his options with respect thereto. He asked the Judge Advocate officer to assist him at trial but was told that under the Uniform Code of Military Justice (hereinafter UCMJ) and the Manual for Courts-Martial (hereinafter MCM) he was not entitled to have military counsel represent him at trial, although he could have retained civilian counsel.
 
 
 5
 Daigle appeared at the court-martial, pleaded guilty and was sentenced, inter alia, to confinement at hard labor for twenty days.
 
 
 6
 Also in June, Petitioner Crosby was informed that he would be tried on three charges by a summary court-martial on July 6, 1972. He, too, was told that he might first consult a legal officer and did so. No lawyer was provided for him at trial. He pleaded guilty to the first charge (disobeying an order) and not guilty to the other two charges. On these latter two he was acquitted after a trial and was sentenced, inter alia, to confinement at hard labor for thirty days.
 
 
 7
 Petitioner Chadwick's situation generally resembled that of Daigle and Crosby, except that when he went to the Naval Law Center to seek advice he was told by a non-lawyer that he should plead guilty because he would probably receive only a light sentence. He, too, was sentenced to confinement at hard labor for thirty days.
 
 
 8
 Petitioner Robinson was convicted after a plea of not guilty to a charge of sleeping on guard duty. He did not have assistance of counsel at his trial nor does the record indicate that he ever consulted with an attorney before trial. He was sentenced to multiple punishments, including confinement at hard labor for thirty days. He has always maintained his innocence of the charges against him.
 
 
 9
 Petitioner Nazimek was convicted of unauthorized absence. He had consulted with a Judge Advocate officer prior to trial and pleaded guilty at the trial. He was sentenced to confinement for fifteen days.
 
 
 10
 Petitioner Johnson was also convicted of a variety of specifications upon his plea of guilty and sentenced to 29 days donfinement.
 
 
 11
 The proceedings in the district court are described in some detail in that court's opinion filed on August 31, 1972. Daigle v. Warner, D.C., 348 F.Supp. 1074. There is no need to repeat that description here. The court held that Argersinger does apply to the military and further:
 
 
 12
 'Whether considered in terms of due process or the Sixth Amendment right to counsel, this court holds that the type and quality of representation which must be provided under Argersinger to summary courts-martial perforce may vary with the context of each particular case.' 348 F.Supp. at 1080.
 
 
 13
 The court concluded that, in light of the number of available limitary lawyers in Hawaii, counsel should have been provided to each accused and granted the writ of habeas corpus as to Petitioners Robinson and Crosby, the only petitioners who had not completed their sentences when the court ruled. As to the other petitioners, the court ordered the records of their convictions expunged.
 
 II. The Summary Court-Martial System
 
 14
 The UCMJ provides for three types of courts-martial: general, special and summary.[2] A general court martial has jurisdiction, subject to constitutional limitations,[3] over all persons subject to the UCMJ for any offense thereunder.[4]
 
 
 15
 The special court-martial has jurisdiction concurrent with the general court-martial as to all non-capital offenses.[5] However, the special court does not have power to sentence the accused to dismissal from the service, to a dishonorable discharge, or to confinement for more than six months.[6]
 
 
 16
 The jurisdiction of summary courts-martial is set out in Article 20 of the UCMJ, 10 U.S.C. 820, as follows:
 
 
 17
 Subject to section 817 of this title (article 17) summary courts-martial have jurisdiction to try persons subject to this chapter, except officers, cadets, aviation cadets, and midshipmen, for any noncapital offense made punishable by this chapter. No person with respect to whom summary courts-martial have jurisdiction may be brought to trial before a summary court-martial if he objects thereto. If objection to trial by summary court-martial is made by an accused, trial may be ordered by special or general court-martial as may be appropriate. Summary courts-martial may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter except death, dismissal, dishonorable or badconduct discharge, confinement for more than one month, hard labor without confinement for more than 45 days, restriction to specified limits for more than two months, or forfeiture of more than two-thirds of one month's pay.
 
 
 18
 The function of a summary court-martial is to dispense justice and administer discipline promptly for relatively minor offenses under simplified procedures. MCM, Para. 79a (1969).
 
 
 19
 The accused before a special or general court-martial is ordinarily entitled to full assistance of counsel.[7] A summary court-martial, however, has no adversary counsel on either side. The court consists of one commissioned officer (generally a non-lawyer) who acts as judge, fact finder, prosecutor and defense counsel.[8]
 
 
 20
 The record of trial of every summary court-martial is first reviewed by the officer who convened the court.[9] Thereafter, it must be reviewed by a judge advocate, an officer generally on the staff of the supervisory authority.[10] An additional appeal may then be made to the Judge Advocate General of the appropriate service.[11]
 
 
 21
 III. The Applicability of the Sixth Amendment Right to Counsel to Trials by Courts-Martial
 
 
 22
 Some courts and scholars, notably the United States Court of Military Appeals and its Chief Judge, Robert E. Quinn, have taken a broad view of the applicability of the provisions of the Bill of Rights to members of the military service. See United States v. Tempia, 16 USCMA 629, 37 CMR 249 (1967); United States v. Jacoby, 11 USCMA 428, 29 CMR 244 (1960) ('The protections of the Bill of Rights, except those which are expressly or by necessary implication inapplicable, are available to members of our armed forces.'); Quinn, The United States Court of Military Appeals and Military Due Process, 35 St. John's L.Rev. 225 (1961); Quinn, United States Court of Military Appeals and Individual Rights in the Military Service, 35 Minn.L.Rev. 49 (1960). In United States v. Culp, 14 USCMA 199, 33 CMR 411 (1963) two judges of the three-judge COMA held that the Sixth Amendment right to counsel applies to special courts-martial, but that the right was not abridged in that case.[12] There is little textual or historical support, however, for the conclusion that the framers of the Bill of Rights intended the Sixth Amendment right to counsel to apply to trials before courts-martial.
 
 
 23
 The Sixth Amendment was not intended to revolutionize criminal procedure. All rights secured by it were available to the accused at common law or under modifications to the common law adopted in the American colonies.[13] The Sixth Amendment's impact was as a 'full and distinct recognition' of the rights secured to an accused at common law. Callan v. Wilson, 127 U.S. 540, 549, 8 S.Ct. 1301, 32 L.Ed. 223 (1888). Thus, the Amendment secures to the accused the right to jury trial for all 'serious offenses'[14] because that was the extent of the colonial right to jury trial. District of Columbia v. Clawans, 300 U.S. 617, 624, 57 S.Ct. 660, 81 L.Ed. 843 (1937); Callan v. Wilson, supra. See Frankfurter & Corcoran, Petty Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv.L.Rev. 917 (1926). But see kaye, Petty Offenders Have No Peers., 26 U.Chi.L.Rev. 245 (1959). In addition, the Sixth Amendment guarantees an accused counsel for his defense in all civilian criminal prosecutions, serious or petty (at least to the extent a sentence of confinement is imposed. Argersinger, supra, at 37 of 407 U.S., 92 S.Ct. 2006), because that was the extent of the right of counsel at common law, as modified in the colonies. Argersinger, supra; Powell v. Alabama, 287 U.S. 45, 60, 53 S.Ct. 55, 77 L.Ed. 158 (1932). But in light of the 18th century practice in America, it cannot be said that the Amendment was intended to be wholly applicable to defendants before military courts. For example, the Amendment's guarantee of the right to jury trial was not intended to apply to military courts. Ex parte Quirin, 317 U.S. 1, 45, 63 S.Ct. 1, 87 L.Ed. 3 (1942). By the same token the Amendment was not intended to extend the scope of the accused's right to counsel before military courts beyond what it had theretofore been.
 
 
 24
 It has been clearly shown that in the late 18th century the right of an accused before a court-martial to have assistance of counsel for his defense was severely limited. See Wiener, Courts Martial and the Bill of Rights: The Original Practice I, 72 Harv.L.Rev. 1 (1958). Certainly there was no right to have personal, adversary counsel of the sort required in state and federal courts by Argersinger. We cannot improve on Colonel Wiener's detailed historical analysis, and we need say only that we agree with his conclusion that the Sixth Amendment was not intended to apply to trials before courts-martial.
 
 
 25
 IV. The extent to which counsel is required by the Due Process Clause of the Fifth Amendment
 
 
 26
 Our conclusion that the Sixth Amendment does not compel the result reached by the district court does not end the inquiry. Courts-martial are required to afford an accused due process of law. Burns v. Wilson, 346 U.S. 137, 142-143, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). Due process is an evolving concept and what is due process at one point in history may not be so regarded as civilization develops.
 
 
 27
 We have two recent guideposts from the Supreme Court on the extent due process required counsel in situations where confinement may be imposed but the Sixth Amendment does not apply. See Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
 
 
 28
 In Gault the Court held that a juvenile charged with delinquency and subject to commitment to an institution was entitled to have counsel appointed to represent him.
 
 
 29
 'A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of laws, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child 'requires the guiding hand of counsel at every step in the proceedings against him." 387 U.S. at 36, 87 S.Ct. at 1448.
 
 
 30
 In Gagnon the court held that personal, adversary counsel was not a constitutional requirement in every parole or probation revocation proceeding. Specifically, the court held:
 
 
 31
 'The decision as to the need for counsel must be made on a case-bycase basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness-- the touchstone of due process-- will require that the State provide at its expense counsel for indigent probationers or parolees.' 411 U.S. 778 at 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656.
 
 
 32
 In our view the present case is better analogized to Gagnon than to Gault. In the first place, servicemen before summary courts-martial are adults, not juveniles. Underlying Gault is the assumption that uncounseled juvenile defendants would ordinarily have great difficulty presenting whatever defense or mitigating circumstances they might have. That assumption does not apply in this case.
 
 
 33
 Second, a summary court-martial is disciplinary in nature and less of an adversary, accusatory proceeding than were the juvenile court hearings considered in Gault. It is more like the parole revocation proceeding in the sense that certain informality and flexibility which may be desirable in some cases would be lost by requiring adversary counsel in all cases.
 
 
 34
 Finally, although that was not a factor in either Gault or Gagnon, we note that the penalties which can be imposed by a summary court-martial are quite restricted. At least any resulting injustice would not be of the same significance as those arising from juvenile or parole revocation proceedings.
 
 
 35
 Gagnon suggests the appropriate due process standard. In Gagnon the Court held that a probationer or parolee has a presumptive right to counsel at a probation or parole revocation hearing
 
 
 36
 'in cases where, after being informed of his right to counsel, the probationer of parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.' 411 U.S. at 790, 93 S.Ct. at 1764.
 
 
 37
 The exigencies of military discipline and the need for flexibility require a modification of this standard for summary courts martial. Counsel should be required only where the issues are of sufficient complexity to require his assistance, even if the defendant raises a colorable claim that he has not committed the offense. Therefore, we hold that counsel must be appointed for the accused before a summary court-martial only where the accused makes a request based on a timely and colorable claim (1) that he has a defense, or (2) that there are mitigating circumstances, and the assistance of counsel is necessary in order adequately to present the defense or mitigating circumstances. Moreover, even when such a request is made, if, due to the exigencies of military operations, qualified counsel is not reasonably available, the military may nevertheless proceed if the rights of the accused will not be unduly prejudiced. But no such difficulties are present in this case.
 
 
 38
 In the present case five of the petitioners pleaded guilty to the charges of which they were convicted, four after consulting with military counsel. The burden will be upon them to convince the district court that the assistance of counsel at their trial was necessary in order for them properly to present some defense or mitigating circumstances.
 
 
 39
 As to petitioner Robinson, who pleaded not guilty and protested his innocence, the situation may be quite different. The government should have the burden of showing that his defense was not 'colorable' or was in fact one that he could present adequately by himself. Whether it has met or can meet this burden must be a question for the district court to resolve in the present case, and for the military justice system itself to resolve in future cases, subject to limited judicial review in habeas proceedings under the 'fully and fairly' test. Burns v. Wilson, supra.[15]
 
 V. Conclusion
 
 40
 Our conclusion that the Constitution does not require appointed counsel in every summary court-martial case should not be read as an unqualified endorsement of the practice which limits the availability of such counsel. While the Navy argues with some vigor that naval discipline will suffer severely if appointed counsel are required, there is scant support for this in the record. The Army and Air Force already provide counsel to all accused before summary courts-martial and the Navy allows private retained counsel to participate in such proceedings.
 
 
 41
 The Navy suggests that the effectiveness of a summary court-martial as a tool for preserving discipline and order will be undermined by the participation of counsel. If so, this must already be true as to those defendants who can afford retained counsel. Cf. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).
 
 
 42
 Justice Powell opined in Argersinger v. Hamlin, supra, at 63 of 407 U.S., 92 S.Ct. 2006 (concurring opinion), that the case-by-case analysis avoided the equal protection problem suggested by Douglas v. California. Perhaps this is true. In any event the equal protection ground is not urged before us.[16]
 
 
 43
 Whether the case-by-case rule will prove administratively feasible is another matter, and one for the Navy to resolve in the first instance. The case-by-case approach established in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) could not endure, but summary courts-martial are not felony trials. More experience over a period of time may supply the answer.
 
 
 44
 The judgment of the district court is reversed. As to all petitioners and intervenors, except Robinson, the petitions should be denied. The district court should conduct further proceedings as to Robinson, consistent with this opinion.
 
 
 45
 TRASK, Circuit Judge (concurring and dissenting):
 
 
 46
 I concur with the majority except as to that portion which would require counsel to be provided to the defendant under certain circumstances in order to meet due process requirements.
 
 
 47
 It appears clear to me that the protections accorded to the defendant in a summary court-martial as outlined in footnote 8 of the majority opinion satisfy the demands of basic fairness inherent in constitutional due process as applied to a code of military justice. A reading of Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), does not persuade me to the contrary. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), was decided in an entirely different context and does not control a resolution of the problem here.
 
 
 
 [1]
 In Argersinger the Supreme Court held that the Sixth and Fourteenth Amendments require the states to provide appointed counsel to all defendants upon whom a sentence of imprisonment is imposed. Argersinger was the culmination of 40 years of case law interpreting and applying the Sixth Amendment's guarantee of counsel in 'all criminal prosecutions.' See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (appointed counsel required in all state felony prosecutions); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (appointed counsel required in all federal prosecution); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (appointed counsel required in a capital case). See also Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Cf. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)
 The reasons which compelled the Supreme Court in Argersinger to conclude that appointed counsel was required in any criminal prosecution which resulted in a sentence of confinement were partly historical and partly in the nature of policy.
 In the first place, history lent little support to the argument of the State of Florida that the Sixth Amendment required the presence of counsel only when the defendant was accused of a serious felony. At common law 'persons accused of misdemeanors were entitled to the full assistance of counsel.' Powell v. Alabama, supra, at 60 of 287 U.S., at 61 of 53 S.Ct.
 But a person charged with treason or a felony 'was denied the aid of counsel, except in respect of legal questions which (he) himself might suggest.' Id. While this latter rule had been changed as to treason after the revolution of 1688, it remained the rule in England at the time of the American Revolution. The great accomplishment of the Sixth Amendment was the adoption of the practice followed in most (if not all) of the colonies of allowing the assistance of counsel to the accused in felony as well as misdemeanor cases. And the decision in Johnson v. Zerbst, supra, settled the rule that 'assistance of counsel' meant assistance of appointed counsel if the accused could not afford to retain a lawyer.
 Long prior to Argersinger it was held that the Sixth Amendment right to counsel applied to misdemeanors as well as serious offense. See Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633 (1942). At issue in Powell, gideon and Argersinger was the extent to which the Sixth Amendment guarantees were made applicable to the states by the Fourteenth Amendment. But in this context the Argersinger result (that the Sixth Amendment right to counsel was fully applicable to the states) was probably inevitable after Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
 An historical analysis was not the only component of the Argersinger decision. As the court noted:
 'The requirement of counsel may well be necessary for a fair trial even in a petty offense prosecution. We are by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more.' 407 U.S. at 33, 92 S.Ct. at 2010.
 1A The government argues that the appellants' claim should be dismissed for failure to exhaust the administrative remedies available under UCMJ Article 69 (review by the office of The Judge Advocate General) and UCMJ Article 138 (review by the officer exercising general court-martial jurisdiction). The government's argument is rejected. One of the policies underlying the exhaustion of administrative remedies doctrine is to allow administrative agencies an opportunity, prior to judicial review, to apply their discretion and expertise to problems within their competence. But where, as here, the issue is purely legal, this policy is not applicable. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). As in McKart, this case involves criminal or quasi-criminal penalties, relief from which would be delayed by the application of the exhaustion doctrine. Where such a situation exists, administrative remedies need not be exhausted prior to review of a purely legal issue. We explicitly refrain from determining the applicability of McKart to cases in which criminal sanctions are not involved.
 
 
 [2]
 UCMJ, Art. 16, 10 U.S.C. 816
 
 
 [3]
 See O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); McElroy v. United States ex rel. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960); Grisham v. Hagan, 361 U.S. 278, 80 S.Ct. 310, 4 L.Ed.2d 279 (1960); Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960); Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955)
 
 
 [4]
 UCMJ, Art. 18, 10 U.S.C. 818
 
 
 [5]
 UCMJ, Art. 19, 10 U.S.C. 819
 
 
 [6]
 Id
 
 
 [7]
 UCMJ, Arts. 27, 38, 10 U.S.C. 827, 838
 
 
 [8]
 The mandate of the summary court officer is found in MCM, Para. 79a (1969):
 'The summary court will thoroughly and impartially inquire into both sides of the matter and will assure that the interests of both the Government and the accused are safeguarded.'
 More specifically, the summary court officer must inform the accused of the charges against him, the name of the officer who convened the court, and the identity of the accuser. MCM, Para. 79d(1). The summary court officer has authority to subpoena witnesses and must call witnesses desired by the accused. MCM, Para. 79b and d(3). He must advise the accused of his right to remain silent. MCM, Para. 79d(1) and (3). Should the accused elect to plead guilty to any specification or charge, the officer must explain to him the elements of the offense to which his guilty plea relates, explain that the guilty plea admits without further proof every element charged, and advise the accused of the maximum sentence which can be imposed upon conviction. The officer may not accept the plea unless, after questioning the accused, he is satisfied 'not only that the accused understands the meaning and effect of his plea and admits the allegations . . . but also that he is voluntarily pleading guilty because he is convinced that he is in fact guilty.' MCM, Para. 79d(2); United States v. Care, 18 USCMA 535, 40 CMR 247 (1969).
 The accused is accorded the right to be informed of and to confront the witnesses against him. MCM, Para. 79d(1) and (3). He may cross-examine adverse witnesses or have the summary court officer cross-examine for him. MCM, Para. 79d(3). He may present evidence on his own behalf and is entitled to have the court assist him in every possible way. Id. He may testify on his own behalf. MCM, Para. 79d(1) and (3). After findings of guilt are announced, the accused may present evidence in extenuation and mitigation, with the assistance of the court-martial officer if the accused desires. MCM, Para. 79d(4). Finally, the accused may make either a sworn or unsworn statement in extenuation and mitigation. Id.
 
 
 [9]
 UCMJ, Art. 60, 10 U.S.C. 860
 
 
 [10]
 UCMJ, Art. 65, 10 U.S.C. 865; MCM, Para. 94
 
 
 [11]
 UCMJ, Art. 69, 10 U.S.C. 869
 
 
 [12]
 At issue is Culp was the constitutionality of former Article 27(c), UCMJ, 10 U.S.C. 827(c). The article, as it then read, permitted the convening authority to detail non-lawyer counsel for the accused in a special court-martial if the prosecution did not have lawyer counsel
 All three judges of COMA agreed that appointment of non-lawyer counsel did not violate the accused's constitutional rights. Judge Kilday felt that the Sixth Amendment right to counsel did not apply to the military. Judges Quinn and Ferguson were of the opinion that while the Amendment did apply to the military, the article was constitutional because Congress had the power to set the qualifications of counsel before courts-martial. See also Angle v. Laird, 429 F.2d 892 (10th Cir. 1970); Harris v. Ciccone, 417 F.2d 479 (8th Cir. 1969); Kennedy v. Commandant, 377 F.2d 339 (10th Cir. 1967); LeBallister v. Warden, 247 F.Supp. 349 (D.Kan.1965). But see Application of Stapley, 246 F.Supp. 316 (D.Utah 1965).
 COMA currently has before it for decision a case which may present the identical issue before us. In re McLean, Misc.Dkt.No.73-5.
 
 
 [13]
 See note 1, supra
 
 
 [14]
 'Serious offenses' are now considered to be those punishable by imprisonment for greater than six months. Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970)
 
 
 [15]
 Burns v. Wilson held that 'when a military decision had dealt fully and fairly with an allegation raised in (the) application (for a writ of habeas corpus), it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence.' 346 U.S. at 142, 73 S.Ct. at 1049
 This court has considered the 'fully and fairly' test in Sunday v. Madigan, 301 F.2d 871 (1962), and Mitchell v. Swope, 224 F.2d 365 (1955). Cf. Kauffman v. Secretary of the Air Force, 135 U.S.App.D.C. 1, 415 F.2d 991 (1969); Kennedy v. Commandant, 377 F.2d 339 (10th Cir. 1967). See, generally, Moyer, Justice and the Military 1230-1262 (1972).
 
 
 [16]
 Cf. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)