408 A.2d 1138

**COMMONWEALTH of Pennsylvania**

**v.**

**Robert FULTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Aug. 17, 1979.

Petition for Allowance of Appeal Denied March 12, 1980.

548

Norman Ackerman, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before VAN der VOORT, WIEAND and LIPEZ, JJ.

VAN der VOORT, Judge:

Early in the afternoon on March 28, 1976, appellant Robert Fulton, age 26, paid a visit to a 47-year old woman who lived in an apartment in the same house on North Sixteenth Street in Philadelphia. Appellant lived on the second floor, the woman lived on the third floor.[1] Appellant had been living in the building approximately one month, and was casually acquainted with the woman. On the afternoon in question, he asked permission to use the phone, then requested some food. When the woman agreed to fix him "a small platter", appellant went to his own apartment and brought back a phonograph and some records. After playing one or more records, appellant asked if the woman would get a radio, then followed her into the bedroom when she went to get it. When the woman pushed appellant and said that she "didn't attend men in [her] bedroom", appellant grabbed her throat, forced her onto the bed, and threatened to hurt her if she attempted to call for help. Appellant forced her to remove all of her clothes, keeping her naked throughout the rest of the afternoon, until the wee hours of the morning. During this time, appellant performed cunnilingus on the woman, and forced her to engage in repeated acts of conventional sexual intercourse. When the woman wanted to use the bathroom, which was in the hall on the third floor, appellant required her to go without clothes, presumably to deter her from attempting to escape or summon help. Between 4:30 and 5:00 A.M., appellant finally left, and the woman phoned the police, who arrived to find appellant standing on the steps in front of the building. Appellant was arrested, charged with involuntary deviate sexual intercourse and rape.

Appellant was tried, non-jury, on June 22, 1976, was found guilty, and was sentenced on September 7, 1976, to serve consecutive terms of two to five and four to ten years imprisonment. The sentences were later vacated and identi-

1. Two other men lived on the third floor (but were seldom home), one other person lived on the second floor, the landlady lived on the first floor.

cal concurrent sentences were imposed. An appeal was filed with our Court, and we remanded for an evidentiary hearing to determine whether or not appellant was ineffectively represented by trial counsel. A hearing was held on February 27, 1978, after which the lower court, by order dated March 7, 1978, found appellant's claim to be "frivolous and unmeritorious". Once again before our Court, appellant argues that the victim's testimony was so totally unworthy of belief, so full of contradictions, that he should be granted a new trial "in the interest of justice". Appellant also argues that his trial counsel was ineffective in several respects. We find no merit to appellant's arguments.

We have carefully examined the notes of testimony in this case, and, contrary to appellant's assertions, there are no "glaring contradictions" in the testimony of the victim. Apart from the fact that the purported contradictions in the victim's testimony were trivial (for example, whether appellant's hand was in front or in back of the victim's neck, whether the victim made one or two trips into the kitchen), it is for the trier of fact to weigh the testimony and resolve any inconsistencies. *Commonwealth v. Bryant,* 247 Pa.Super. 460, 462, 372 A.2d 917 (1977); *Commonwealth v. Bartell,* 184 Pa.Super. 528, 136 A.2d 166 (1957). The "interest of justice" does not require that appellant be given a new trial.

As part of his argument that he was ineffectively represented by trial counsel, appellant alleges that trial counsel failed to adequately investigate the background of the victim, and was therefore unable to competently cross-examine her. Appellant points to the inability of counsel to produce a written report of an investigation. At the hearing on February 27, 1978, counsel testified that her office did attempt to investigate the victim's background, and that the investigation failed to disclose anything that would have been favorable to appellant's defense. The lower court obviously believed counsel's testimony. Counsel had no obligation to present appellant with a written report of such investigation.

■ Appellant argues that trial counsel failed to ask the victim questions on cross-examination concerning the following:

1) Whether the victim had smoked any marijuana;

2) What appellant and the victim had talked about;

3) Why the victim didn't run or scream, or lock the door when she left the apartment to go to the bathroom (which was not located within the apartment itself);

4) How the victim knew that appellant's penis and not a finger had entered her vagina;

5) The oral sex act, generally;

6) Why the victim let appellant into her apartment and fixed dinner for him.

The substance of all these matters was covered on direct examination, and cross-examination on some of them could have resulted in calling undue attention to certain aspects of the case. Counsel did question the victim concerning topics of conversation between the victim and appellant, but was unable to elicit any helpful testimony. Appellant's defense was that the intercourse was consensual, and appellant's counsel asked the victim questions which tended to emphasize the fact that the victim had been out of appellant's sight for short periods of time and might have been able to escape or call for help. The woman had mentioned on direct examination, however, that appellant had threatened to hurt her, and counsel's cross-examination was undoubtedly conducted with concern that the witness might elaborate on the threats which appellant had made. On direct examination, the victim had described the sexual acts in detail, and no purpose would have been served by having her describe them again on cross-examination. Cross-examination of the witness was a matter requiring the expertise and experience of counsel, and the decision not to cross-examine the witness on certain aspects of the case was within counsel's exclusive province. See *Commonwealth v. McGrogan,* 449 Pa. 584, 297 A.2d 456 (1972); *Angle v. Laird,* 429 F.2d 892 (10th Cir. 1970). Our examination of the notes of testimony in this

case reveals that counsel's cross-examination of the witness was conducted in a thorough manner, with regard for appellant's best interests.

 Appellant's final argument is that he received ineffective assistance of counsel because trial counsel pressured him into waiving a jury trial, and failed to advise him that he could withdraw his waiver at any time prior to verdict. Pa.Rule of Criminal Procedure 1102(b) provides that a defendant has the right to withdraw his waiver of a jury trial at any time prior to the commencement of trial. Between the commencement of trial and entry of the verdict, however, a defendant may withdraw his waiver of jury trial only with the permission of the trial judge. In the case before us, immediately prior to trial, appellant's attorney advised appellant on the record of his right to a jury trial, and appellant indicated that he wanted to be tried non-jury. The colloquy continued:

Q. And no one has made any threats or in any way forced you to make that decision?

A. No, they haven't.

Q. And you and I have discussed this matter before you came to the bar of the Court, is that correct?

A. Yes, it is.

Q. And are you satisfied with my representation of you so far in this matter?

A. Yes.

THE COURT: Mr. Fulton, in a jury trial twelve people would have to be convinced of your guilt, you understand that, don't you?

MR. FULTON: Yes.

THE COURT: In a judge trial, if I proceed, then the only person to be convinced in this matter would be me, do you understand that?

MR. FULTON: Yes.

THE COURT: Do you have any questions as to your rights to a jury trial?

MR. FULTON: No.

THE COURT: Did you understand everything Ms. Subin has said to you?

MR. FULTON: Yes.

THE COURT: Do you have any questions?

MR. FULTON: No.

THE COURT: All right, I'll accept a waiver.

It is clear from the colloquy that appellant voluntarily waived his right to a jury trial. Although trial counsel admittedly did not advise appellant that, after trial had commenced but before the judge reached a verdict, he could request permission to withdraw his waiver of a jury trial, counsel testified at the February 27 hearing that appellant gave no indication after trial commenced that he wanted to be tried by a jury. Under the circumstances, given no indication that appellant was unhappy with his non-jury trial, counsel could hardly be deemed ineffective for failing to advise appellant that he could ask the court to stop the proceedings and begin the trial anew with a jury.

We find no merit to any of appellant's arguments. Judgment of sentence affirmed.