# MIDDENDORF, SECRETARY OF THE NAVY, ET AL. *v.* HENRY ET AL.

No. 74–175.  Argued  January  22,  1975—Reargued  November  5, 1975—Decided March 24, 1976*

*Together with No. 74–5176, *Henry et al.* v. *Middendorf, Secretary of the Navy, et al.*, also on certiorari to the same court.

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, and POWELL, JJ., joined. POWELL, J., filed a concurring opinion, in which BLACKMUN, J., joined, *post*, p. 49. STEWART, J., filed a dissenting statement, *post*, p. 49. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 51. STEVENS, J., took no part in the consideration or decision of the cases.

*Harvey M. Stone* argued the cause *pro hac vice* for petitioners in No. 74–175 and respondents in No. 74–5176 on the reargument. *Deputy Solicitor General Frey* argued the cause for those parties on the original argument. With *Mr. Stone* on the brief were *Solicitor General Bork, Assistant Attorney General Petersen, Harriet S. Shapiro, Sidney M. Glazer, Merlin H. Staring, H. B. Robertson, Jr.,* and *Max G. Halliday.*

*Nathan R. Zahm* reargued the cause for petitioners in No. 74–5176 and respondents in No. 74–175. With him on the briefs were *A. L. Wirin, Fred Okrand, David F. Addlestone,* and *Thomas M. Geisler, Jr.*

28

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

In February 1973 plaintiffs [1]—then enlisted members of the United States Marine Corps—brought this class action in the United States District Court for the Central District of California challenging the authority of the military to try them at summary courts-martial without providing them with counsel. Five plaintiffs [2] had been charged with "unauthorized absences" [3] in violation of Art. 86, UCMJ, 10 U. S. C. § 886, convicted at summary courts-martial, and sentenced, *inter alia,* to periods of confinement ranging from 20 to 30 days at hard labor. The other three plaintiffs, two of whom were charged, *inter alia,* with unauthorized absence and one with assault, Art. 128, UCMJ, 10 U. S. C. § 928, had been ordered to stand trial at summary courts-martial which had not been convened. Those who were convicted had not been provided counsel—those who were awaiting trial had been informed that counsel would not be provided. All convicted plaintiffs were informed prior to trial that they would not be afforded counsel and that they could refuse trial by summary court-martial if they so desired. In the event of such refusal their cases would be referred to special courts-martial at which counsel would be provided. All plaintiffs consented in writing to proceed to trial by summary court-martial, without

---

[1] Both parties have petitioned from the judgment of the court below. For simplicity we refer to the servicemen as "plaintiffs" and the federal parties as "defendants."

[2] Including two who were not among the original six plaintiffs but later intervened.

[3] One of these plaintiffs was also charged with several other offenses, including assault on a superior noncommissioned officer, Art. 91, Uniform Code of Military Justice (UCMJ), 10 U. S. C. § 891.

counsel.[4]   Plaintiffs' court-martial records were reviewed and approved[5] by the Staff Judge Advocate pursuant to Art. 65 (c), UCMJ, 10 U. S. C. § 865 (c).   Plaintiffs did not file a petition for review with the Judge Advocate General of the Navy pursuant to Art. 69, UCMJ, 10 U. S. C. § 869.[6]

In the District Court, plaintiffs brought a class action seeking habeas corpus (release from confinement), an

---

[4] Plaintiffs were so informed and consented pursuant to the terms of (Navy) Staff Judge Advocate Memorandum 10–72 which was in force at El Toro Marine Corps Air Station where all plaintiffs were stationed.   Record 18.

For example, as to plaintiff Henry, the following entry appears in the record of his court-martial:

"The accused was advised that, if tried by Summary Court-Martial, he would not be represented by appointed military counsel; that instead, that Summary Court-Martial Officer would thoroughly and impartially inquire into both sides of the matter, and would assure that the interests of both the Government and the accused are safeguarded; that, if his case were that referred to a Special Courts-Martial [sic], he would be provided counsel.   In addition, the accused, after being informed of the maximum punishment imposable in his case both by a Summary Courts-Martial [sic] and Special Courts-Martial [sic], he would be foregoing his statutory rights to counsel at a Special Courts-Martials [sic]."   Id., at 114.

[5] At least one plaintiff, McLean, was found not guilty as to certain charges at the summary court-martial.   Upon review at the supervisory authority level, guilty findings on certain other charges upon which he had been convicted were reversed.

[6] These plaintiffs arguably failed to exhaust their military remedies.   However, the defendants urge that exhaustion not be required here because the practice of the Judge Advocate General has been to defer consideration of any petitions on the right-to-counsel issue pending the completion of litigation on this issue in the federal courts.

Since the exhaustion requirement is designed to protect the military from undue interference by the federal courts, Schlesinger v. Councilman, 420 U. S. 738, 758 (1975), the military can waive that requirement where it feels that review in the federal courts is necessary.   See Sosna v. Iowa, 419 U. S. 393, 396–397, n. 3 (1975).

injunction against future confinement resulting from uncounseled summary court-martial convictions, and an order vacating the convictions of those previously convicted.

The District Court allowed the suit to proceed as a class action, expunged all of plaintiffs' convictions, released all plaintiffs and all other members of their class [7] from confinement, and issued a worldwide injunction against summary courts-martial without counsel. Because of our disposition of this case on the merits, we have no occasion to reach the question of whether Fed. Rule Civ. Proc. 23, providing for class actions, is applicable to petitions for habeas corpus, see *Harris* v. *Nelson*, 394 U. S. 286 (1969), or whether the District Court properly determined that its remedial order was entitled to be enforced outside of the territorial limits of the district in which the court sat.

The Court of Appeals vacated the judgment of the District Court, and remanded the case for reconsideration in light of the Court of Appeals' opinion in *Daigle* v. *Warner*, 490 F. 2d 358 (CA9 1973). *Daigle* had held that there was no Sixth Amendment right to counsel in summary courts-martial, and likewise held that there was no absolute Fifth Amendment due process right to counsel in every case in which a military defendant might be imprisoned. However, citing *Gagnon* v. *Scarpelli*, 411 U. S. 778 (1973), it did hold that counsel was required where the "accused makes a request based on a timely and colorable claim (1) that he has a defense, or (2) that there are mitigating circumstances, and the assistance of counsel is necessary in order adequately to

---

[7] The class included all members of the Navy and Marine Corps who "were or are now or will be required after (the date of the order) to stand trial by summary courts-martial" and who had not been afforded counsel. 357 F. Supp. 495, 499 (1973).

present the defense or mitigating circumstances." *Daigle* made an exception from this general rule for cases in which counsel "is not reasonably available," in which instance it would not be required. 490 F. 2d, at 365. We granted certiorari. 419 U. S. 895 (1974).

I

The UCMJ provides four methods for disposing of cases involving offenses committed by servicemen: the general, special, and summary courts-martial, and disciplinary punishment administered by the commanding officer pursuant to Art. 15, UCMJ, 10 U. S. C. § 815. General and special courts-martial resemble judicial proceedings, nearly always presided over by lawyer judges with lawyer counsel for both the prosecution and the defense.[8] General courts-martial are authorized to award any lawful sentence, including death. Art. 18, UCMJ, 10 U. S. C. § 818. Special courts-martial may award a bad-conduct discharge, up to six months' confinement at hard labor, forfeiture of two-thirds pay per month for six months, and in the case of an enlisted member, reduction to the lowest pay grade, Art. 19, UCMJ, 10 U. S. C. § 819. Article 15 punishment, conducted personally by the accused's commanding officer, is an admin-

---

[8] These features are mandatory for general courts-martial. Special courts-martial may be, but seldom are, convened without a military judge; in such cases, the senior member of the court presides. Appointed defense counsel at a special court-martial is required to be an attorney, unless an attorney cannot be obtained because of physical conditions or military exigencies. In addition to the appointed counsel at a general or special court-martial, the accused may retain civilian counsel at his own expense, or he may be represented by a military lawyer of his own selection, if such lawyer is "reasonably available." Arts. 16, 25, 27 (b), 27 (c), 38 (b), UCMJ, 10 U. S. C. §§ 816, 825, 827 (b), 827 (c), 838 (b).

istrative method of dealing with the most minor offenses. *Parker* v. *Levy*, 417 U. S. 733, 750 (1974).[9]

The summary court-martial occupies a position between informal nonjudicial disposition under Art. 15 and the courtroom-type procedure of the general and special courts-martial. Its purpose, "is to exercise justice promptly for relatively minor offenses under a simple form of procedure." Manual for Courts-Martial ¶ 79*a* (1969) (MCM). It is an informal proceeding conducted by a single commissioned officer with jurisdiction only over noncommissioned officers and other enlisted personnel. Art. 20, UCMJ, 10 U. S. C. § 820. The presiding officer acts as judge, factfinder, prosecutor, and defense counsel. The presiding officer must inform the accused of the charges and the name of the accuser and call all witnesses whom he or the accused desires to call.[10] MCM ¶ 79*d* (1). The accused must consent to trial

---

[9] The maximum punishments which may be imposed under Art. 15 are: 30 days' correctional custody; 60 days' restriction to specified limits; 45 days' extra duties; forfeiture of one-half of one month's pay per month for two months; detention of one-half of one month's pay per month for three months; reduction in grade. Enlisted members attached to or embarked on a vessel may be sentenced to three days' confinement on bread and water or diminished rations. Correctional custody is not necessarily the same as confinement. It is intended to be served in a way which allows normal performance of duty, together with intensive counseling. Persons serving correctional custody, however, may be confined. Art. 15 (b). See Department of the Navy, SECNAV Inst. 1640.9, Corrections Manual, c. 7, June 1972; Department of the Army, Pamphlet No. 27–4, Correctional Custody, 1 June 1972; Department of the Air Force, Reg. 125–35, Correctional Custody, 7 Oct. 1970.

[10] Additionally, the officer must inform the accused of his right to remain silent and allow him to cross-examine witnesses or have the summary court officer cross-examine them for him. The accused may testify and present evidence in his own behalf. If the

by summary court-martial; if he does not do so, trial may be ordered by special or general court-martial.

The maximum sentence elements which may be imposed by summary courts-martial are: one month's confinement at hard labor; 45 days' hard labor without confinement; two months' restriction to specified limits; reduction to the lowest enlisted pay grade; and forfeiture of two-thirds pay for one month. Art. 20, UCMJ, 10 U. S. C. § 820.[11]

## II

The question of whether an accused in a court-martial has a constitutional right to counsel has been much debated [12] and never squarely resolved. See *Reid* v. *Covert*, 354 U. S. 1, 37 (1957). Dicta in *Ex parte Milligan*, 4 Wall. 2, 123 (1866), said that "the framers of the Constitution, doubtless, meant to limit the right of trial by

---

accused is found guilty he may make a statement, sworn or unsworn, in extenuation or mitigation. MCM ¶ 79d.

The record of the trial is then reviewed by the convening officer, Art. 60, UCMJ, 10 U. S. C. § 860, and thereafter by a judge advocate. Art. 65 (c), UCMJ, 10. U. S. C. § 865 (c).

[11] Not all these sentence elements may be imposed in one sentence, and enlisted persons above the fourth enlisted pay grade may not be sentenced to confinement or hard labor by summary courts-martial, or reduced except to the next inferior grade. MCM ¶¶ 16b and 127c.

[12] Compare, Wiener, Courts-Martial and the Bill of Rights: The Original Practice, 72 Harv. L. Rev. 1 (1958), which finds that there is no historic precedent for application of the right to counsel to courts-martial, with Henderson, Courts-Martial and the Constitution: The Original Understanding, 71 Harv. L. Rev. 293 (1957), which concludes that the original intent of the Framers was to apply the Sixth Amendment right to counsel to the military. Compare *Daigle* v. *Warner*, 490 F. 2d 358 (CA9 1973), with *Betonie* v. *Sizemore*, 496 F. 2d 1001 (CA5 1974).

jury, in the sixth amendment, to those persons who were subject to indictment or presentment in the fifth." In *Ex parte Quirin,* 317 U. S. 1, 40 (1942), it was said that " 'cases arising in the land or naval forces' . . . are expressly excepted from the Fifth Amendment, and are deemed excepted by implication from the Sixth."

We find it unnecessary in this case to finally resolve the broader aspects of this question, since we conclude that even were the Sixth Amendment to be held applicable to court-martial proceedings, the summary court-martial provided for in these cases was not a "criminal prosecution" within the meaning of that Amendment.[13]

This conclusion, of course, does not answer the ultimate question of whether the plaintiffs are entitled to counsel at a summary court-martial proceeding, but it does shift the frame of reference from the Sixth Amendment's guarantee of counsel "[i]n all criminal prosecutions" to the Fifth Amendment's prohibition against the deprivation of "life, liberty, or property, without due process of law."

*Argersinger* v. *Hamlin,* 407 U. S. 25 (1972), held that the Sixth Amendment's provision for the assistance of counsel extended to misdemeanor prosecutions in civilian courts if conviction would result in imprisonment. A

---

[13] Since under our Brother MARSHALL's analysis the Sixth Amendment applies to the military, it would appear that not only the right to counsel but the right to jury trial, which is likewise guaranteed by that Amendment, would come with it. While under *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), such a right would presumably not obtain in cases of summary courts-martial because of the short periods of confinement which they may impose, it would surely apply to special and general courts-martial, which are empowered to impose sentences far in excess of those held in *Duncan* to be the maximum which could be imposed without a jury. Whatever may be the merits of "selective incorporation" under the Fourteenth Amendment, the Sixth Amendment makes absolutely no distinction between the right to jury trial and the right to counsel.

summary court-martial may impose 30 days' confinement at hard labor, which is doubtless the military equivalent of imprisonment. Yet the fact that the outcome of a proceeding may result in loss of liberty does not by itself, even in civilian life, mean that the Sixth Amendment's guarantee of counsel is applicable. In *Gagnon* v. *Scarpelli*, 411 U. S. 778 (1973), the respondent faced the prospect of being sent to prison as a result of the revocation of his probation, but we held that the revocation proceeding was nonetheless not a "criminal proceeding." We took pains in that case to observe:

> "[T]here are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences.
>
> "In a criminal trial, the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights which may be lost if not timely raised; and, in a jury trial, a defendant must make a presentation understandable to untrained jurors. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation described above; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole." *Id.*, at 788–789.

*In re Gault*, 387 U. S. 1 (1967), involved a proceeding in which a juvenile was threatened with confinement. The Court, although holding counsel was required, went on to say:

> " 'We do not mean . . . to indicate that the hearing

to be held must conform with all of the require-ments of a criminal trial or even of the usual ad-ministrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.' " *Id.*, at 30.

The Court's distinction between various civilian pro-ceedings, and its conclusion that, notwithstanding the potential loss of liberty, neither juvenile hearings nor probation revocation hearings are "criminal proceed-ings," are equally relevant in assessing the role of the summary court-martial in the military.

The summary court-martial is, as noted above, one of four types of proceedings by which the military imposes discipline or punishment. If we were to remove the holding of *Argersinger* from its civilian context and apply it to require counsel before a summary court-martial proceeding simply because loss of liberty may result from such a proceeding, it would seem all but inescapable that counsel would likewise be required for the lowest level of military proceeding for dealing with the most minor offenses. For even the so-called Art. 15 "nonjudicial punishment," which may be imposed ad-ministratively by the commanding officer, may result in the imposition upon an enlisted man of "correctional custody" with hard labor for not more than 30 consecu-tive days.[14]   10 U. S. C. § 815 (b).[15]   But we think that

---

[14] Chief Judge Darden, dissenting in *United States* v. *Alderman*, 22 U. S. C. M. A. 298, 46 C. M. R. 298 (1973), made a similar observation:

"While it may be argued that counsel should be required for sum-mary courts-martial since they constitute criminal convictions and not for Article 15 proceedings as they are nonjudicial and corrective in nature, the effect of confinement under the former and correctional custody under the latter is difficult to distinguish. See In re Gault, 387 U. S. 1 (1967). Consequently, I would have difficulty in sus-

the analysis made in cases such as *Gagnon* and *Gault,* as well as considerations peculiar to the military, counsel against such a mechanical application of *Argersinger.*

Admittedly *Gagnon* is distinguishable in that there the defendant had been earlier sentenced at the close of an orthodox criminal prosecution. But *Gault* is not so distinguishable: there the juvenile faced possible initial confinement as a result of the proceeding in question, but the Court nevertheless based its conclusion that counsel was required on the Due Process Clause of the Fourteenth Amendment, rather than on any determination that the hearing was a "criminal prosecution" within the meaning of the Sixth Amendment.

It seems to us indisputably clear, therefore, that even in a civilian context the fact that a proceeding will result in loss of liberty does not *ipso facto* mean that the proceeding is a "criminal prosecution" for purposes of the Sixth Amendment. Nor does the fact that confinement will be imposed in the first instance as a result of that proceeding make it a "criminal prosecution." When we consider in addition the fact that a summary court-martial occurs in the military community, rather than the civilian community, we believe that the considerations supporting the conclusion that it is not a "criminal prosecution" are at least as strong as those which were held dispositive in *Gagnon* and *Gault.*

The dissent points out, *post,* at 56–57, n. 6, that in

taining the position that while counsel must be provided before summary courts-martial, they may be dispensed with in Article 15 proceedings that may result in correctional custody." *Id.,* at 308 n. 1, 46 C. M. R., at 308 n. 1.

[15] This section provides that a commanding officer (of the grade of major or lieutenant commander or above) may impose, *inter alia,* not more than 30 consecutive days of "correctional custody," § 815 (b)(2)(H)(ii), during duty or non-duty hours and may include "hard labor." § 815 (b).

*Gault* the Court gave weight to the rehabilitative purpose of the juvenile proceedings there involved, and that no such factor is present in summary courts-martial. Undoubtedly both *Gault* and *Gagnon* are factually distinguishable from the summary court-martial proceeding here. But together they surely stand for the proposition that even in the civilian community a proceeding which may result in deprivation of liberty is nonetheless not a "criminal proceeding" within the meaning of the Sixth Amendment if there are elements about it which sufficiently distinguish it from a traditional civilian criminal trial. The summary court-martial proceeding here is likewise different from a traditional trial in many respects, the most important of which is that it occurs within the military community. This latter factor, under a long line of decisions of this Court, is every bit as significant, and every bit as entitled to be given controlling weight, as the fact in *Gagnon* that the defendant had been previously sentenced, or the fact in *Gault* that the proceeding had a rehabilitative purpose.

We have only recently noted the difference between the diverse civilian community and the much more tightly regimented military community in *Parker* v. *Levy,* 417 U. S. 733, 749 (1974). We said there that the UCMJ "cannot be equated to a civilian criminal code. It, and the various versions of the Articles of War which have preceded it, regulate aspects of the conduct of members of the military which in the civilian sphere are left unregulated. While a civilian criminal code carves out a relatively small segment of potential conduct and declares it criminal, the Uniform Code of Military Justice essays more varied regulation of a much larger segment of the activities of the more tightly knit military community." *Ibid.* Much of the conduct proscribed by the military is not "criminal" conduct in the civilian sense of the word. *Id.,* at 749–751.

Here, for example, most of the plaintiffs were charged solely with "unauthorized absence," an offense which has no common-law counterpart and which carries little popular opprobrium.  Conviction of such an offense would likely have no consequences for the accused beyond the immediate punishment meted out by the military, unlike conviction for such civilian misdemeanors as vagrancy or larceny which could carry a stamp of "bad character" with conviction.[16]

---

[16] Our Brother MARSHALL argues, *post*, at 57–58, and nn. 8 and 9, that the military considers a summary court-martial conviction as "criminal."  But Admiral Hearn, the Navy Judge Advocate General, did not describe the convictions as "criminal"; he did state that a commanding officer's decision to utilize a summary court-martial, as opposed to an Art. 15 administrative punishment, might turn on his judgment that it was "in the best interests of the service to begin to put on record [the] infractions" of a serviceman who had accumulated several Art. 15 punishments for the same type of offense. Joint Hearings on Military Justice before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary and a Special Subcommittee of the Senate Committee on Armed Services, 89th Cong., 2d Sess., 34 (1966) (1966 Hearings).  The Army Assistant Judge Advocate General then pointed out that one advantage a summary court-martial held for the accused, over an Art. 15 proceeding, was that the latter was adjudged by the company commander, the "nominal accuser," whereas "the summary court knows nothing about the case at all."  *Ibid.*

The dissent also refers us to the Army's acknowledgment of "collateral consequences" flowing from a summary court-martial conviction.  *Post,* at 58–59.  But that which is quoted in the text is a portion of the Army's written response in 1962 to the following question: "What are the effects on a serviceman's career of conviction by summary or special court-martial?"  The disjunctive in the question makes it impossible to tell whether the portion quoted is addressed to special or summary court-martial, or both.

Finally, whatever conclusions may have been drawn by the author of the article in 39 Va. L. Rev. 319 cited by the dissent, *post*, at 59 n. 11, as to the "impact of a summary court-martial conviction," are of little aid to present considerations.  The article was written at

By the same token, the penalties which may be meted out in summary courts-martial are limited to one month's confinement at hard labor, 45 days' hard labor without confinement, or two months' restriction to specified limits.[17] Sanctions which may be imposed affecting a property interest are limited to reduction in grade with attendant loss of pay, or forfeiture or detention of a portion of one month's pay.

Finally, a summary court-martial is procedurally quite different from a criminal trial. In the first place, it is not an adversary proceeding. Yet the adversary nature of civilian criminal proceedings is one of the touchstones of the Sixth Amendment's right to counsel[18] which we

---

the inception of the UCMJ, then in operation for a year, and discusses sentencing in terms of the interaction between the Code and the corresponding 1951 Manual for Courts-Martial. Both, of course, have undergone substantial revision in the intervening 23 years. It should not be lightly assumed that the author's conclusions drawn at that time are valid with respect to the present UCMJ and MCM, or the manner in which they are currently implemented by the various services.

[17] Our Brother MARSHALL notes, *post,* at 57, that technically even the most serious noncapital UCMJ offenses may be tried before a summary court-martial. But that is of little practical effect upon the serviceman accused, given the ceilings on punishments imposed by Art. 20. It would seem inconceivable that a serious charge such as striking a commissioned officer, Art. 90 (1), UCMJ, 10 U. S. C. § 890 (1)—for which a general court-martial could impose a 10-year sentence—would ever be prosecuted before a court which could impose maximum confinement at hard labor for only one month. But if that occurred, an accused so charged before a summary court-martial would no doubt be delighted at his good fortune. The fact is, as the dissent notes, *post,* at 57–58, n. 8, that only 14% of the summary courts-martial conducted by the Navy are for "nonmilitary" offenses. We do not regard this figure as "substantial" in the sense that the dissent apparently does.

[18] As we held in *Johnson* v. *Zerbst,* 304 U. S. 458, 462–463 (1938):

"The Sixth Amendment . . . embodies a realistic recognition of the obvious truth that the average defendant does not have the

extended to petty offenses in *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972).

*Argersinger* relied on *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), where we held:

> "[I]n our adversary system of criminal justice, any person haled into court . . . cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. . . ." *Id.,* at 344.

The function of the presiding officer is quite different from that of any participant in a civilian trial. He is guided by the admonition in ¶ 79*a* of the MCM: "The function of a summary court-martial is to exercise justice promptly for relatively minor offenses under a simple form of procedure. The summary court will thoroughly and impartially inquire into both sides of the matter and will assure that the interests of both the Government and the accused are safeguarded." The presiding officer is more specifically enjoined to attend to the interests of the accused by these provisions of the same paragraph:

> "The accused will be extended the right to cross-examine these witnesses. The summary court will aid the accused in the cross-examination, and, if the accused desires, will ask questions suggested by the accused. On behalf of the accused, the court will obtain the attendance of witnesses, administer the oath and examine them, and obtain such other evi-

---

professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel."

dence as may tend to disprove or negative guilt of the charges, explain the acts or omissions charged, show extenuating circumstances, or establish grounds for mitigation. Before determining the findings, he will explain to the accused his right to testify on the merits or to remain silent and will give the accused full opportunity to exercise his election." MCM ¶ 79d (3).

We believe there are significant parallels between the Court's description of probation and parole revocation proceedings in *Gagnon* and the summary court-martial, which parallels tend to distinguish both of these proceedings from the civilian misdemeanor prosecution upon which *Argersinger* focused. When we consider in addition that the court-martial proceeding takes place not in civilian society, as does the parole revocation proceeding, but in the military community with all of its distinctive qualities, we conclude that a summary court-martial is not a "criminal prosecution" for purposes of the Sixth Amendment.[19]

### III

The Court of Appeals likewise concluded that there was no Sixth Amendment right to counsel in summary court-martial proceedings such as this, but applying the due process standards of the Fifth Amendment adopted a standard from *Gagnon* v. *Scarpelli*, 411 U. S. 778 (1973), which would have made the right to counsel depend upon the nature of the serviceman's defense. We

---

[19] No one of the factors discussed above—the nature of the proceedings, of the offenses, and of the punishments—is necessarily dispositive. Rather, all three combine with the distinctive nature of military life and discipline to lead to our conclusion. The dissent, by discussing these factors independently and attempting to demonstrate that each factor cannot stand by its own force does not come to grips with this analysis.

are unable to agree that the Court of Appeals properly applied *Gagnon* in this military context.

We recognize that plaintiffs, who have either been convicted or are due to appear before a summary court-martial, may be subjected to loss of liberty or property, and consequently are entitled to the due process of law guaranteed by the Fifth Amendment.

However, whether this process embodies a right to counsel depends upon an analysis of the interests of the individual and those of the regime to which he is subject. *Wolff* v. *McDonnell*, 418 U. S. 539, 556 (1974).

In making such an analysis we must give particular deference to the determination of Congress, made under its authority to regulate the land and naval forces, U. S. Const., Art. I, § 8, that counsel should not be provided in summary courts-martial. As we held in *Burns* v. *Wilson*, 346 U. S. 137, 140 (1953):

> "[T]he rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment. The Framers especially entrusted that task to Congress." (Footnote omitted.)

The United States Court of Military Appeals has held that *Argersinger* is applicable to the military and requires counsel at summary courts-martial. *United States* v. *Alderman*, 22 U. S. C. M. A. 298, 46 C. M. R. 298 (1973). Dealing with areas of law peculiar to the military branches, the Court of Military Appeals' judgments are normally entitled to great deference. But the 2-to-1 decision, in which the majority itself was sharply divided in theory, does not reject the claim of military necessity. Judge Quinn was of the opinion that *Argersinger*'s expansion of the Sixth Amendment right to counsel was

44

binding on military tribunals equally with civilian courts.[20] *Alderman, supra,* at 300, 46 C. M. R., at 300. Judge Duncan, concurring in part, disagreed, reasoning that decisions such as *Argersinger* were not binding precedent if "there is demonstrated a military necessity demanding nonapplicability." *Id.,* at 303, 46 C. M. R., at 303. He found no convincing evidence of military necessity which would preclude application of *Argersinger.* Chief Judge Darden, dissenting, disagreed with Judge Quinn, and pointed to that court's decisions recognizing "the need for balancing the application of the constitutional protection against military needs." *Id.,* at 307, 46 C. M. R., at 307. Taking issue as well with Judge Duncan, he stated his belief that the Court of Military Appeals "possesses no special competence to evaluate the effect of a particular procedure on morale and discipline and to require its implementation over and above the balance struck by Congress." *Id.,* at 308, 46 C. M. R., at 308.

Given that only one member of the Court of Military Appeals took issue with the claim of military necessity, and taking the latter of Chief Judge Darden's statements as applying with at least equal force to the Members of this Court, we are left with Congress' previous determination that counsel is not required. We thus need only decide whether the factors militating in favor of counsel at summary courts-martial are so extraordinarily weighty as to overcome the balance struck by Congress.[21]

---

[20] Judge Quinn's broad view of the applicability of the Bill of Rights to members of the military is well established. Concurring in *United States* v. *Culp,* 14 U. S. C. M. A. 199, 216–217, 33 C. M. R. 411, 428–429 (1963), he stated that its protections run to the Armed Forces " 'unless excluded directly or by necessary implication, by the provisions of the Constitution itself.' " See also *United States* v. *Jacoby,* 11 U. S. C. M. A. 428, 530–431, 29 C. M. R. 244, 246–247 (1960).

[21] Prior to the enactment of the UCMJ into positive law in

We first consider the effect of providing counsel at summary courts-martial. As we observed in *Gagnon* v. *Scarpelli, supra,* at 787:

"The introduction of counsel into a . . . proceeding will alter significantly the nature of the proceeding. If counsel is provided for the [accused], the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views."

In short, presence of counsel will turn a brief, informal hearing which may be quickly convened and rapidly concluded into an attenuated proceeding which consumes the resources of the military to a degree which Congress could properly have felt to be beyond what is warranted by the relative insignificance of the offenses being tried. Such a lengthy proceeding is a particular burden to the Armed Forces because virtually all the participants, including the defendant and his counsel, are members of

---

1956 it was suggested that summary courts-martial be abolished. Congress rejected this suggestion and instead provided that no person could be tried by summary court-martial if he objected thereto (unless he had previously refused Art. 15 punishment). 70A Stat. 43. Prior to the 1968 amendments to the Code the elimination of summary courts-martial was again proposed and rejected. *E. g.,* Subcommittee on Constitutional Rights of Senate Committee on the Judiciary, 88th Cong., 1st Sess., Summary—Report of Hearings on Constitutional Rights of Military Personnel, 34–36 (1963). Instead, the Art. 15 exception to the right to refuse was eliminated as a compromise between those favoring retention of summary courts-martial and those who would abolish them. S. Rep. No. 1601, 90th Cong., 2d Sess., 6 (1968). It is thus apparent that Congress has considered the matter in some depth.

the military whose time may be better spent than in possibly protracted disputes over the imposition of discipline.[22]

As we observed in *U. S. ex rel. Toth* v. *Quarles,* 350 U. S. 11, 17 (1955):

> "[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise. But trial of soldiers to maintain discipline is merely incidental to an army's primary fighting function. To the extent that those responsible for performance of this primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is not served. . . . [M]ilitary tribunals have not been and probably never can be constituted in such way that they can have the same kind of qualifications that the Constitution has deemed essential to fair trials of civilians in federal courts."

However, the Court of Appeals did not find counsel necessary in all proceedings but only, pursuant to *Daigle* v. *Warner,* where the accused makes

> "a timely and colorable claim (1) that he has a defense, or (2) that there are mitigating circumstances, and the assistance of counsel is necessary in order adequately to present the defense or mitigating circumstances." 490 F. 2d, at 365.

But if the accused has such a claim, if he feels that in order to properly air his views and vindicate his rights,

---

[22] The one-month period of confinement which may be imposed by a summary court-martial stands in marked contrast with the period of confinement for a minimum of three years which could have been imposed in a juvenile proceeding in *In re Gault,* 387 U. S. 1, 37 n. 60 (1967).

a formal, counseled proceeding is necessary he may simply refuse trial by summary court-martial and proceed to trial by special or general court-martial at which he may have counsel.[23]   Thus, he stands in a considerably more favorable position than the probationer in *Gagnon* who, though subject to the possibility of longer periods of incarceration, had no such absolute right to counsel.[24]

It is true that by exercising this option the accused subjects himself to greater possible penalties imposed in the special court-martial proceeding.   However, we do not find that possible detriment to be constitutionally decisive.   We have frequently approved the much more difficult decision, daily faced by civilian criminal defendants, to plead guilty to a lesser included offense.   *E. g.*, *Brady* v. *United States*, 397 U. S. 742, 749–750 (1970). In such a case the defendant gives up not only his right to counsel but his right to any trial at all.   Furthermore,

---

[23] Article 20 UCMJ, 10 U. S. C. § 820, provides in pertinent part that "[n]o person with respect to whom summary courts-martial have jurisdiction may be brought to trial before a summary court-martial if he objects thereto. . . ."

Article 38 (b) UCMJ, 10 U. S. C. § 838 (b), provides:

"The accused has the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available, or by the defense counsel detailed under section 827 of this title."

[24] The dissent criticizes our failure to discuss *Gault, supra,* as to this point.   *Gault* is inapposite.   Contrary to the assertion of the dissent, *post,* at 69 n. 22, Gault, had he been tried in the adult courts, would have been subject to a maximum sentence of two . *months* rather than the six years he actually received.   387 U. S., at 29.   We cannot speculate what the result in *Gault* would have been if there had been a waiver available and if the adult sentence had been greater rather than less than the juvenile.

if he elects to exercise his right to trial he stands to be convicted of a more serious offense which will likely bear increased penalties.[25]

Such choices are a necessary part of the criminal justice system:

> "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. *McMann* v. *Richardson*, 397 U. S., at 769. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *McGautha* v. *California*, 402 U. S. 183, 213 (1971).

We therefore agree with the defendants that neither the Sixth nor the Fifth Amendment to the United States Constitution empowers us to overturn the congressional determination that counsel is not required in summary courts-martial. The judgment of the Court of Appeals is therefore

*Reversed.*

MR. JUSTICE STEVENS took no part in the consideration or decision of these cases.

---

[25] It by no means follows, as the dissent suggests, *post,* at 71–72, that the same result would obtain with such a two-tier system in the civilian context, where *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), and *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972), have held the Sixth Amendment's right to counsel applicable. In such a context, the reasoning of *United States* v. *Jackson,* 390 U. S. 570 (1968), that one cannot be penalized for exercising a constitutional right would come into play. Here, however, we have held that there is no constitutional right to counsel at summary court-martial, so the issue of being penalized for the exercise of such a right is not presented.

Mr. Justice Stewart dissents, believing that the Due Process Clause of the Fifth Amendment requires that a defendant be accorded the assistance of counsel in a summary court-martial proceeding.

Mr. Justice Powell, with whom Mr. Justice Blackmun joins, concurring.

As I agree with the substance and holding of the Court's opinion, I join it. I write separately to emphasize the factor which, in my view, distinguishes this case from *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972). One sentence expresses the fundamental basis for the distinction:

> "This Court has long recognized that the military is, by necessity, a specialized society separate from civilian society." *Parker* v. *Levy,* 417 U. S. 733, 743 (1974).

In *Parker,* the Court went on to say that we also have recognized that "the military has, again by necessity, developed laws and traditions of its own during its long history." *Ibid.* Only last Term in *Schlesinger* v. *Councilman,* 420 U. S. 738, 757 (1975), we said:

> "The laws and traditions governing [military] discipline have a long history; . . . they are founded on unique military exigencies as powerful now as in the past. Their contemporary vitality repeatedly has been recognized by Congress."

The Constitution expressly authorized the Congress to "make Rules for the Government and Regulation of the land and naval Forces." Art. I, § 8. Court-martial proceedings, as a primary means for the regulation and discipline of the Armed Forces, were well known to the Founding Fathers. The procedures in such courts were

never deemed analogous to, or required to conform with, procedures in civilian courts. One must ignore history, tradition, and practice for two centuries to read into the Constitution, at this late date, a requirement for counsel in the discipline of minor violations of military law.[1]

I recognize, of course, that one's constitutional rights are not surrendered upon entering the Armed Services. But the rights are applied, as this Court often has held, in light of the "unique military exigencies" that necessarily govern many aspects of military service. See *Parker* v. *Levy, supra,* at 758. In recognition of this, since the founding of the Republic Congress has enacted special legislation applicable only to the Armed Services,[2] including the current provisions in the Uniform Code of

---

[1] As noted in the Court's opinion, the relatively petty offenses that customarily come before summary courts-martial most often involve military offenses unknown in civilian society. In this case, for example, most of the plaintiffs were charged only with "unauthorized absence." To be sure, such courts also try some offenses that would be violations of civilian criminal law. But these are typically petty offenses and are committed by defendants subject to military discipline. The Court has no occasion in this case to address whether the Constitution requires the providing of counsel in special and general court-martial proceedings where serious, civil felonies are often charged. Indeed, all of the Armed Services now are required by statute to provide counsel in such cases. Art. 27, UCMJ, 10 U. S. C. § 827.

[2] In *Schlesinger* v. *Councilman,* referring to the Uniform Code, the Court said:

"Congress attempted to balance these military necessities [governing discipline] against the equally significant interest of ensuring fairness to servicemen charged with military offenses, and to formulate a mechanism by which these often competing interests can be adjusted. As a result, Congress created an integrated system of military courts and review procedures . . . ." 420 U. S. 738, 757–758 (1975).

Military Justice for summary courts-martial. Art. 16 (3), UCMJ, 10 U. S. C. § 816 (3).

I find no basis for holding now that the Constitution compels the equating, for purposes of requiring that counsel be provided, of military summary courts with civilian criminal courts.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

We only recently held that, absent a waiver, "no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger* v. *Hamlin*, 407 U. S. 25, 37 (1972). Today the Court refuses to apply *Argersinger*'s holding to defendants in summary court-martial proceedings. Assuming for purposes of its opinion that the Sixth Amendment applies to courts-martial in general, the Court holds that, because of their special characteristics, summary courts-martial in particular are simply not "criminal prosecutions" within the meaning of the Sixth Amendment, and that the right to counsel is therefore inapplicable to them. I dissent.

## I

Preliminarily, summary courts-martial aside, it is clear to me that a citizen does not surrender all right to appointed counsel when he enters the military. It is inconceivable, for example, that this Court could conclude that a defendant in a general court-martial proceeding, where sentences as severe as life imprisonment may be imposed, is not entitled to the same protection our Constitution affords a civilian defendant facing even a day's imprisonment. See *Argersinger* v. *Hamlin, supra.* Surely those sworn to risk their lives to defend the Constitution should derive some benefit from the right to counsel, a

right that has become even more firmly entrenched in our jurisprudence over the past several generations. See *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Powell* v. *Alabama,* 287 U. S. 45 (1932).

The only question that might arise is whether the general guarantee of counsel to court-martial defendants is to be placed under the Fifth Amendment or under the Sixth Amendment. It is my conviction that it is a Sixth Amendment guarantee. That Amendment provides an explicit guarantee of counsel "in all criminal prosecutions." Since, as we recently observed, courts-martial are "convened to adjudicate charges of criminal violations of military law," *Parisi* v. *Davidson,* 405 U. S. 34, 42 (1972), it would seem that courts-martial are criminal prosecutions and that the Sixth Amendment therefore applies on its face.

There is legitimate dispute among scholars, it is true, about whether the Framers expressly intended the Sixth Amendment right to counsel to apply to the military. See *ante,* at 33–34, and n. 12.[1] While the historical evidence is somewhat ambiguous, my reading of the sources suggests that the Sixth Amendment right to counsel was intended by the Framers to apply to courts-martial.

---

[1] Those who argue that the Framers did intend the Sixth Amendment right to counsel to apply point both to congressional proceedings which seem to assume the right's applicability, see Henderson, Courts-Martial and the Constitution: The Original Understanding, 71 Harv. L. Rev. 293, 303–315 (1957), and materials cited therein, and to the fact that it was traditional in the late 18th century to allow an accused serviceman legal assistance. *Id.,* at 318. Those who take the opposite position point, *inter alia,* to contemporary treatises, see Wiener, Courts-Martial and the Bill of Rights: The Original Practice I, 72 Harv. L. Rev. 1, 23–26 (1958), and materials cited therein, to the lack of mention of any right to counsel in the first military codes under the Constitution, *id.,* at 22–23, and to the fact that any counsel who did appear in military proceedings was allowed only a limited role. *Id.,* at 27–32.

But even if the historical evidence plainly showed to the contrary—and its certainly does not—that would not be determinative of the contemporary scope of the Sixth Amendment. As Mr. Chief Justice Hughes observed:

> "If by the statement that what the Constitution meant at the time of its adoption it means to-day, it is intended to say that the great clauses of the Constitution must be confined to the interpretation which the framers, with the conditions and outlook of their time, would have placed upon them, the statement carries its own refutation." *Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 442–443 (1934).

Application of the Sixth Amendment right to counsel to the military follows logically and naturally from the modern right-to-counsel decisions, in which the right has been held fully applicable in every case in which a defendant faced conviction of a criminal offense and potential incarceration.[2] See, *e. g., Argersinger* v. *Hamlin,*

---

[2] In any given case, whether there is a Sixth Amendment right to trial by jury is, of course, not at all determinative of whether there is a Sixth Amendment right to counsel. Indeed, in *Argersinger* itself we stated that "[w]e reject, therefore, the premise that since prosecutions for crimes punishable by imprisonment for less than six months may be tried without a jury, they may also be tried without a lawyer." 407 U. S. 25, 30–31 (1972). Compare *id.,* at 37, with *Duncan* v. *Louisiana,* 391 U. S. 145, 159 (1968).

This Court has indicated that the Fifth Amendment's express exemption of the military from the requirement of indictment by grand jury also exempts the military "inferentially, from the [Sixth Amendment] right to trial by jury." *O'Callahan* v. *Parker,* 395 U. S. 258, 261 (1969). But there is no reason to assume that the same inferences from the Fifth Amendment exemption should be drawn with regard to the Sixth Amendment right to counsel. Not even the federal parties suggest that the settling of the jury-trial issue with regard to the military has *ipso facto* settled all other Sixth Amendment issues as well.

*supra; Gideon* v. *Wainwright, supra.* The due process right to counsel, usually applied on a case-by-case basis, extends a qualified right to counsel to persons not involved in criminal proceedings, see *Gagnon* v. *Scarpelli*, 411 U. S. 778 (1973), but has not been viewed as a replacement for the Sixth Amendment right to counsel in situations in which a defendant stands to be convicted of a criminal offense.

In short, it is my belief that the Sixth Amendment demands that court-martial defendants ordinarily be accorded counsel.[3] Only if the *special* characteristics of summary courts-martial in particular deprive them of the status of "criminal prosecutions" is the Sixth Amendment inapplicable in the cases before us today. It is, of course, this proposition to which the major part of the Court's opinion is addressed and to which I now turn.

## II

The Court's conclusion that summary courts-martial are not "criminal prosecutions" is, on its face, a surprising one. No less than in the case of other courts-martial, summary courts-martial are directed at adjudicating "charges of criminal violations of military law," and conviction at a summary court-martial can lead to confinement for one month. Nevertheless, the Court finds its conclusion mandated by a combination of

---

[3] Even if a pure due process analysis were to be used, however, counsel, to my mind, would still be required for courts-martial. Many of the factors analyzed below in a Sixth Amendment context, see Part II, *infra,* are fully relevant to a due process analysis. See *Gagnon* v. *Scarpelli,* 411 U. S. 778 (1973); *Morrissey* v. *Brewer,* 408 U. S. 471 (1972). And, while *Gagnon* adopts a case-by-case approach to the right to counsel in probation revocation proceedings, the fact that in courts-martial we are dealing with a trial which can result in a criminal conviction mandates that counsel be made available in every case. See *Gagnon, supra,* at 789 n. 12.

four factors: [4] the limitations on the punishment that can be meted out by a summary court-martial, the nature of the offenses for which a defendant can be tried, the nature of the summary court-martial proceeding itself, and "the distinctive nature of military life and discipline." *Ante,* at 42 n. 19. I am totally unpersuaded that these considerations—or any others—

---

[4] The Court looks to our analysis in *Gagnon* v. *Scarpelli, supra,* as support in the distinctions it draws between "criminal prosecutions" under the Sixth Amendment and summary courts-martial. I find that reliance questionable, to say the least.

The Court intimates, *ante,* at 35, that our holding in *Gagnon* that a probation revocation hearing is not part of a criminal prosecution was based on factors relating to the manner in which such hearings are conducted—factors such as the absence of a prosecutor and the informality of the proceedings. This, however, is an inaccurate reflection of what we said in *Gagnon. Gagnon*'s conclusion, stated early in the opinion, 411 U. S., at 782, that a probation revocation hearing is "not a stage of a criminal prosecution" was not at all dependent on the manner in which such proceedings are conducted. Rather, it was held to follow from the conclusion in *Morrissey* v. *Brewer, supra,* that revocation of parole was not part of a criminal prosecution, with the following analysis in *Morrissey* held to be determinative:

" 'Parole arises after the end of the criminal prosecution, including imposition of sentence. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.' [408 U. S.], at 480." 411 U. S., at 781. The manner in which the hearing was conducted was simply not a factor in our conclusion that such a hearing is not part of a "criminal prosecution." Only *after* we reached this conclusion did we refer to the manner in which the hearing was conducted in considering the *secondary* question whether the right to appointed counsel was nevertheless required as a matter of due process. Thus, even assuming there are "parallels" between the manner in which probation-revocation hearings are conducted and the manner in which summary courts-martial are conducted, *ante,* at 41–42, *Gagnon* lends no support to the conclusion that summary courts-martial are not "criminal prosecutions" within the meaning of the Sixth Amendment.

whether taken singly or in combination, justify denying
to summary court-martial defendants the right to the
assistance of counsel, "one of the safeguards of the
Sixth Amendment deemed necessary to insure funda-
mental human rights of life and liberty." *Johnson* v.
*Zerbst,* 304 U. S. 458, 462 (1938).

## A

It is of course true, as the Court states, that a sum-
mary court-martial may not adjudge confinement in ex-
cess of one month. Manual for Courts-Martial ¶ 16*b*
(1969) (MCM).[5] But *Argersinger* itself held the length
of confinement to be wholly irrelevant in determining
the applicability of the right to counsel. Aware that
"the prospect of imprisonment for however short a time
will seldom be viewed by the accused as a trivial or
'petty' matter," *Baldwin* v. *New York,* 399 U. S. 66, 73
(1970) (plurality opinion), we held in *Argersinger* that
the fact of confinement, not its duration, is determina-
tive of the right to counsel. Insofar as the Court to-
day uses the 30-day ceiling on a summary court-martial
defendant's sentence as support for its holding, it is not
so much finding *Argersinger* "inapplicable" as rejecting
the very basis of *Argersinger*'s holding.[6]

---

[5] The MCM was prescribed by Executive Order of September 11,
1968, to supplement the Uniform Code of Military Justice (UCMJ).

[6] The Court attempts to evade *Argersinger*'s clear mandate by
relying on our decisions in *Gagnon* v. *Scarpelli, supra,* and *In re
Gault,* 387 U. S. 1 (1967). As for *Gagnon,* I have already observed,
*supra,* n. 4, that it lends no support to the Court's Sixth Amend-
ment analysis in this case. As for *Gault,* it is true that we have
held that juvenile delinquency proceedings, even though they might
result in confinement, are not "criminal prosecutions" under the Sixth
Amendment. *McKeiver* v. *Pennsylvania,* 403 U. S. 528 (1971);
see *id.,* at 553 (opinion of BRENNAN, J.). However, that con-
clusion was undoubtedly based on the predominantly rehabilitative
purpose of the juvenile justice system, a factor which, as shown

## B

In further support of its holding, the Court observes that "[m]uch of the conduct proscribed by the military is not 'criminal' conduct in the civilian sense of the word," *ante*, at 38, and intimates that conviction for many offenses normally tried at summary court-martial would have no consequences "beyond the immediate punishment meted out by the military." *Ante*, at 39. The Court's observations are both misleading and irrelevant.

While the summary court-martial is generally designed to deal with relatively minor offenses, see MCM ¶ 79, as a statutory matter the summary proceeding can be used to try *any* noncapital offense triable by general or special court-martial. Art. 20, UCMJ, 10 U. S. C. § 820.[7] See *United States* v. *Moore*, 5 U. S. C. M. A. 687, 697, 18 C. M. R. 311, 321 (1955). And while the offense for which most of the plaintiffs here were tried—unauthorized absence—has no common-law counterpart, a substantial proportion of the offenses actually tried by summary court-martial are offenses, such as larceny and assault, that would also constitute criminal offenses if committed by a civilian.[8] Indeed, one of the service-

---

*infra*, at 61, is manifestly not present in the summary court-martial context. And, while *Gault* did not apply the Sixth Amendment, it did, of course, hold a due process right to counsel applicable to *all* juvenile delinquency proceedings which pose a threat of confinement.

[7] Of course the punishment ceilings imposed by 10 U. S. C. § 820 on summary courts-martial are applicable no matter what offense is being tried. But the "popular opprobrium" resulting from conviction of a serious crime—a factor in which the Court places considerable stock, *ante*, at 39—is likely to be severe whatever the magnitude of the punishment; that "popular opprobrium" could, of course, have significant "practical effect," *ante*, at 40 n. 17, on a serviceman's future.

[8] See 10 U. S. C. §§ 921, 928. Figures supplied by the federal parties indicate that in 1973, 14% of the summary courts-martial

men in these cases was charged with assault. It is therefore misleading to suggest, as the Court does, that there is a fundamental difference between the type of conduct chargeable at summary court-martial and the type of conduct deemed criminal in the civilian sector.

The Court's further implication that a summary court-martial conviction has no consequences beyond "the immediate punishment" *ante,* at 39, is also inaccurate. One of the central distinctions between Art. 15 nonjudicial punishment and a summary court-martial conviction is that the latter is regarded as a criminal conviction.[9] And that criminal conviction has collateral consequences both in military and civilian life. As the Army itself has readily acknowledged:

> "Conviction by [any] court-martial creates a criminal record which will color consideration of any subsequent misconduct by the soldier. A noncommissioned officer may survive one summary court-martial without reduction being effected, but it is unlikely that, with one conviction on his record, he will survive a second trial and retain his status. A conviction of an officer by any court-martial could

conducted by the Navy were for "nonmilitary offenses." Brief for Federal Parties 33; see also Fidell, The Summary Court-Martial: A Proposal, 8 Harv. J. Legis. 571, 599 n. 121 (1971). See also Joint Hearings on Military Justice before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary and a Special Subcommittee of the Senate Committee on Armed Services, 89th Cong., 2d Sess., 1056 (1966) (hereinafter cited as 1966 Hearings).

[9] In Senate testimony, the Judge Advocate General of the Navy observed that a serviceman convicted by a summary court-martial as opposed to one punished under Art. 15, "begins to acquire a record of convictions." 1966 Hearings 33. See also Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, Summary—Report of Hearings on the Constitutional Rights of Military Personnel, 88th Cong., 1st Sess., 35 (1963).

have a devastating aftereffect upon his career. It could be described in some cases as a sentence to a passover on a promotion list and may serve as a basis for initiation of administrative elimination action.

"For any man, the fact of a criminal conviction on his record is a handicap in civilian life. It may interfere with his job opportunities; it may be counted against him if he has difficulty with a civilian law enforcement agency; and in general he tends to be a marked man." [10]

The MCM itself belies any claim that no significant consequences beyond immediate punishment attach to a summary court-martial conviction. Paragraph 127c of the MCM establishes a comprehensive scheme by which an offender is made subject to increased punishment if he has a record of previous convictions—even if all of those previous convictions were by summary court-martial.

It is therefore wholly unrealistic to suggest that the impact of a summary court-martial conviction lies exclusively in the immediate punishment that is meted out.[11] Summary court-martial convictions carry with them a potential of stigma, injury to career, and increased punishment for future offenses in the same way as do convictions after civilian criminal trials and convictions after general and special courts-martial.

Quite apart from their flimsy factual basis, the Court's observations as to both the nature of the offenses tried at summary court-martial and the lack of collateral conse-

---

[10] Hearings on Constitutional Rights of Military Personnel before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 87th Cong., 2d Sess., 838 (1962).

[11] See also Fidell, *supra*, n. 8, at 594–596; Feld, The Court Martial Sentence: Fair or Foul, 39 Va. L. Rev. 319, 322 (1953).

quences of convictions have already been determined by *Argersinger* to be irrelevant to the applicability of the Sixth Amendment's right to counsel. *Argersinger* teaches that the right to counsel is triggered by the potential of confinement, regardless of how trivial or petty the offense may seem. See 407 U. S., at 37. Logic itself would therefore preclude the suggestion that the right to counsel, activated by the potential of confinement, is deactivated by the absence of collateral consequences of conviction.

## C

The nature of the summary court-martial proceeding— the proceeding's nonadversary nature and, relatedly, the protective functions of its presiding officer—is a third factor which, according to the Court, helps to make unnecessary the provision of counsel to the accused. Again, the Court's reliance is without substantial foundation.

The Court characterizes summary courts-martial as "nonadversary," but offers little explanation as to how that characterization advances the contention that the right to counsel is inapplicable. If the Court's argument is simply that furnishing counsel will transform the proceeding into an adversary proceeding, it is no argument at all, but simply an observation. The argument must be either that there is something peculiar about the goal of the summary court-martial proceeding that makes the right to counsel inapplicable, or that there are elements in the conduct of the proceeding itself that render counsel unnecessary.

To the extent that the Court's characterization of summary courts-martial as "nonadversary" is meant to convey something about the goal or purpose of the proceeding, it is totally unpersuasive. In this sense the summary court-martial proceeding is far less "nonadversary" than the juvenile delinquency proceedings to which we

held the right to counsel applicable in *In re Gault*, 387 U. S. 1 (1967). The Court in *Gault* did not dispute that the proper purpose of the juvenile justice system is re-habilitative rather than punitive, that all parties to a juvenile delinquency proceeding might be striving for an adjudication and disposition that is in "the best interests of the child," and that the traditional notion of the "kindly juvenile judge" is a highly appropriate one. See *id.*, at 27. Yet the Court in *Gault* confronted the reality that, however beneficial the goal of delinquency proceedings, they have as their potential result the confinement of an individual in an institution. *Ibid.* This factor mandated that accused juvenile offenders be entitled to the representation of counsel.[12]

As distinguished from the situation in *Gault*, summary courts-martial have no special rehabilitative purpose; rather, their central immediate purpose is to discipline those who have violated the UCMJ.[13] If the goals of juvenile delinquency proceedings are an insufficient justification for the denial of counsel, it follows *a fortiori* that the goals of the summary court-martial are similarly insufficient.

The second possible meaning conveyed by characterizing the summary court-martial as "nonadversary"—the

---

[12] The Court intimates that our decision in *Gault* might have been different had Gerald Gault been faced with a period of confinement significantly less than three years in duration. *Ante*, at 46 n. 22. However, our opinion contained no hint of any such limitation and held the right to counsel applicable *whenever* a juvenile is faced with proceedings "which may result in commitment to an institution in which the juvenile's freedom is curtailed." 387 U. S., at 41.

[13] In general, "a military trial is marked by the age-old manifest destiny of retributive justice. . . . '[M]ilitary law has always been and continues to be primarily an instrument of discipline, not justice.' Glasser, Justice and Captain Levy, 12 Columbia Forum 46, 49 (1969)." *O'Callahan* v. *Parker*, 395 U. S. 258, 266 (1969).

presence of elements in the conduct of the proceeding itself which render independent counsel unnecessary—is reflected in the Court's observation that the "function of the presiding officer is quite different from that of any participant in a civilian trial." *Ante,* at 41. It is the responsibility of the presiding officer to act as judge, jury, prosecutor, and defense counsel combined. The Court intimates that the presiding officer's duty to advise the accused of his rights and his ability to help the accused assemble facts, examine witnesses, and cross-examine his accusers make defense counsel unnecessary, particularly in light of the absence of a formal prosecutor in the proceeding. I find this argument unpersuasive. In *Powell v. Alabama,* 287 U. S. 45 (1932), we rejected the notion that a judge could "effectively discharge the obligations of counsel for the accused," largely because a judge "cannot . . . participate in those necessary conferences between counsel and accused which sometimes partake of the inviolable character of the confessional." *Id.,* at 61.

It is true that in *Powell* the unrepresented defendant was opposed by a traditional prosecutor. But in *Gault, supra,* there was no prosecutor; the only participants in the delinquency proceedings were the juvenile, his mother, the probation officers, and the judge. All participants were presumably interested in the welfare of the juvenile. Yet we held that no matter how protective the judge or the other participants might have been, the juvenile was entitled to independent counsel.

The irreconcilable conflict among the roles of the summary court-martial presiding officer inevitably prevents him from functioning effectively as a substitute for defense counsel. For instance, a defendant has a right to remain silent and not testify at his court-martial. See Art. 31, UCMJ, 10 U. S. C. § 831; MCM ¶ 53*h*. An in-

telligent decision whether to exercise that right requires consultation as to whether testifying would hurt or help his case and inevitably involves the sharing of confidences with counsel. Full consultation cannot possibly take place when "defense counsel" is also playing the role of judge and prosecutor. The defense counsel who also serves as prosecutor and judge is effectively unavailable for many of the "necessary conferences between counsel and accused," *Powell* v. *Alabama, supra,* at 61, as well as for the making and implementation of critical tactical and strategic trial decisions. As helpful as the presiding officer might be to the defendant, his inconsistent roles bar him from being an adequate substitute for independent defense counsel.

In sum, there is nothing about the assertedly "nonadversary" nature of the summary court-martial—either in terms of its goals or alternative safeguards—that renders unnecessary the assistance of counsel.

## D

Finally, the Court draws on notions of military necessity to justify its conclusion that the right to counsel is inapplicable to summary court-martial proceedings. Concerns for discipline and obedience will on occasion, it is true, justify imposing restrictions on the military that would be unconstitutional in a civilian context. See *Parker* v. *Levy,* 417 U. S. 733, 758 (1974). But denials of traditional rights to any group should not be approved without examination, especially when the group comprises members of the military, who are engaged in an endeavor of national service, frequently fraught with both danger and sacrifice. After such examination, I am persuaded that the denial of the right to counsel at summary courts-martial cannot be justified by military necessity.

64

The substance of the asserted justification here is that discipline, efficiency, and morale demand the utilization of an expeditious disciplinary procedure for relatively minor offenses. It would seem, however, that Art. 15 nonjudicial punishment—which can be speedily imposed by a commander, but which does not carry with it the stigma of a criminal conviction—provides just such a procedure.[14] Indeed, the 1962 amendments to Art. 15, 10 U. S. C. § 815, greatly expanded the availability of nonjudicial punishment and resulted in a sharp decrease in the utilization of the summary court-martial.[15] There is, therefore, no pressing need to have a streamlined summary court-martial proceeding in order to supply an expeditious disciplinary procedure. Moreover, it is by no means clear that guaranteeing counsel to summary court-martial defendants would result in significantly longer time periods from preferral of charges to punishment than *fairly* conducted proceedings in the absence of counsel;[16] any timesaving that is now

---

[14] Differences have been advanced to distinguish the punishment that can be imposed under Art. 15 from the "confinement" that can result from a summary court-martial. See *United States* v. *Shamel*, 22 U. S. C. M. A. 361, 47 C. M. R. 116 (1973) (Quinn, J.).

[15] Between 1962 and 1969, the number of summary courts-martial per year in the Armed Services dropped from 85,166 to 28,281, and their percentage of the total military caseload dropped from 64% to 26%. Fidell, *supra*, n. 8, at 573. "The chief explanation for this phenomenon lies in the expansion of nonjudicial punishment powers accomplished in 1963." *Id.*, at 572.

[16] While, according to the federal parties to these cases, the average time period between preferral of charges and final review in summary courts-martial has increased by 13 days since the United States Court of Military Appeals applied *Argersinger* to the military in *United States* v. *Alderman*, 22 U. S. C. M. A. 298, 46 C. M. R. 298 (1973), Supp. Mem. for Federal Parties 3–4, the parties themselves concede that "it is not possible to ascribe the changed experience . . . exclusively to the injection of counsel into summary court proceedings." *Ibid.* Nothing is offered by the federal parties

enjoyed might well result from the presiding officer's being something less than an adequate substitute for independent defense counsel.

It is especially difficult to accept the federal parties' claim of "military necessity" in view of the fact that well *before* our decision in *Argersinger,* each of the services allowed summary court-martial defendants to retain counsel at their own expense.[17]   Given this fact, the fed-

---

to indicate that the average time of the summary court-martial proceeding itself has been lengthened as a result of providing counsel to defendants.

[17] See 1966 Hearings 34 (testimony of Brig. Gen. Kenneth J. Hodson, Asst. Judge Adv. Gen. for Military Justice, Department of the Army); 38 (testimony of Maj. Gen. R. W. Manss, Judge Adv. Gen. of the Air Force); 39 (testimony of Rear Adm. Wilfred A. Hearn, Judge Adv. Gen. of the Navy); 626 (letter of June 7, 1965, to the Chairman of the Senate Committee on Armed Services from the Acting General Counsel of the Department of the Treasury).

Indeed, while acknowledging that "[t]here is no provision either in law or regulation for the appointment of counsel before a summary court-martial," the Department of the Treasury indicated, six years *before Argersinger* was decided, that "it is Treasury Department policy [in the Coast Guard] that military counsel for a summary court-martial will be supplied upon request if reasonably available." *Id.,* at 627.

Moreover, the following question-and-answer exchange took place in 1966 by letter between the Senate Subcommittee on Constitutional Rights and the Navy Judge Advocate General Corps:

"Question: Are defendants permitted by official Defense Department or service policy or regulation to have counsel assist them in summary courts?

"Answer: . . . [A]lthough the right to individual representation is not extended to an accused before a summary court-martial by policy or regulation, the general practice in the naval service is to accord such representation on the request of the accused.

.    .    .    .    .

"Question: . . . If a man requests the appointment of counsel, legal or otherwise, is it the practice to grant such requests?

"Answer: Yes, dependent upon the reasonable availability of the requested counsel." *Id.,* at 939.

eral parties' argument is reduced to a contention that only those defendants who cannot afford to retain counsel must, as a matter of "military necessity," be denied counsel at summary court-martial proceedings. Sustaining that contention means a defeat for those very principles of equality and justice that the military is sworn to defend; the most fundamental notions of fairness are subverted when the rights of the poor alone are sacrificed to the cause of "military necessity."

It is also significant that the United States Court of Military Appeals (USCMA), a body with recognized expertise in dealing with military problems,[18] has applied *Argersinger* to summary courts-martial without giving any hint that military necessity posed a problem. *United States* v. *Alderman,* 22 U. S. C. M. A. 298, 46 C. M. R. 298 (1973).[19] Indeed, Judge Duncan of that court explicitly noted that "the record contains no evidence which convinces me that application of the *Argersinger* rule should not be followed in our system because of military necessity." *Id.,* at 303, 46 C. M. R., at 303 (concurring in part and dissenting in part).[20] And even before *Alderman* was decided, both the Air Force and the

---

[18] See *Schlesinger* v. *Councilman,* 420 U. S. 738, 758 (1975); *Noyd* v. *Bond,* 395 U. S. 683, 694 (1969).

[19] The decisions of the USCMA are final. 10 U. S. C. § 876. It is indeed ironic that the federal parties—statutorily barred from appealing *Alderman*—have now secured its rejection through this lawsuit, originally brought in federal court by servicemen seeking the very protections later accorded them by *Alderman.*

[20] See also *Daigle* v. *Warner,* 490 F. 2d 358 (1974), cert. pending, No. 73-6642, in which the Court of Appeals for the Ninth Circuit noted that "[w]hile the Navy argues with some vigor that naval discipline will suffer severely if appointed counsel are required [in summary courts-martial], there is scant support for this in the record." *Id.,* at 366.

The Court, relying on previously stated views of Judge Quinn, one of the members of the *Alderman* majority, and on Judge Quinn's

Army applied *Argersinger* to summary courts-martial [21] rather than advancing the theoretically available "military necessity" argument. See *United States* v. *Priest,* 21 U. S. C. M. A. 564, 45 C. M. R. 338 (1972). That they did so leads me to doubt whether even the military was then of the opinion that military necessity dictated the denial of counsel.

Virtually ignoring all the factors that cast doubt on the military-necessity justification, the Court defers to an asserted congressional judgment that "counsel should not be provided in summary courts-martial." *Ante,* at 43. While Congress' evaluation of military necessity is clearly entitled to deference, it would be a departure from our position in the past to suggest that the Court need not come to its own conclusion as to the validity of any argument based on military necessity. See, *e. g., United States* v. *Robel,* 389 U. S. 258, 264 (1967); *Parker* v. *Levy,* 417 U. S. 733 (1974); cf. *New York Times Co.* v. *United States,* 403 U. S. 713 (1971). But regardless of what weight is properly accorded a clear congressional determination of military necessity, there has been no such determination in this case.

The only congressional action referred to by the Court is Congress' refusal in 1956 and 1968 to abolish summary

---

failure in his *Alderman* opinion to explicitly mention the military-necessity argument, declines to view *Alderman* as a rejection of that argument. I disagree. In *United States* v. *Priest,* 21 U. S. C. M. A. 564, 45 C. M. R. 338 (1972)—decided only 10 months before *Alderman*—the USCMA had recognized, albeit in another context, that military necessity may affect the application of traditional constitutional rights to members of the military, and the parties in *Alderman* briefed the military-necessity argument in great detail. Judge Quinn concurred in the *Priest* opinion. These factors, plus Judge Duncan's explicit reference to the argument, lead me to read *Alderman* as a rejection of the military-necessity argument.

[21] *United States* v. *Alderman, supra,* at 303, 46 C. M. R., at 303 (Duncan, J., concurring in part and dissenting in part).

courts-martial altogether and its concurrent extending of the serviceman's opportunity to reject trial by summary court-martial. The Court refers to that action as evidence that Congress has considered "in some depth" the matter whether counsel is required in summary courts-martial. *Ante,* at 45 n. 21. But there is no evidence offered of any detailed congressional consideration of the specific question of the feasibility of providing counsel at summary courts-martial. And, more importantly, there is no indication that Congress made a judgment that military necessity requires the denial of the constitutional right to counsel to summary court-martial defendants.

If Congress' lack of discussion of military necessity is not enough to throw substantial doubt on the Court's inferences, the timing of the congressional action cited by the Court should certainly do so. All that action occurred substantially before our decision in *Argersinger.* Thus, even if we assume that Congress' decision to retain the summary court-martial represents a considered conclusion that "counsel should not be provided," that judgment was made at a time when even civilian defendants subject to prison terms of less than six months had no recognized constitutional right to counsel. There would, therefore, have been little reason for Congress in 1956 or 1968 to undertake the detailed consideration necessary to make a finding of "military necessity" before concluding that counsel need not be provided to summary court-martial defendants.

In sum, there is simply no indication that Congress ever made a clear determination that "military necessity" precludes applying the Sixth Amendment's right to counsel to summary court-martial proceedings. Indeed, the Court characterizes the congressional determination in the vaguest of terms, and never expressly

claims that Congress made a determination of military necessity. Thus, I can only read the Court's opinion as a grant of almost total deference to any Act of Congress dealing with the military.

## III

The Court rejects even the limited holding of the Court of Appeals that the provision of counsel in summary court-martial proceedings should be evaluated as a matter of due process on the basis of the accused's defense in any particular case. The Court explains that summary court-martial defendants can have counsel appointed by refusing trial by summary court-martial and then proceeding to trial by special court-martial—the acknowledged consequence of which is exposure to greater possible penalties. Given my conviction that a summary court-martial is a criminal prosecution under the Sixth Amendment, it is unnecessary for me to deal in detail with this due process question.[22] In the event, however, that the special court-martial option may be offered as additional support for the Court's treatment of the Sixth Amendment issue, I shall briefly assess its significance.

The Court analogizes the decision whether to expose oneself to special court-martial with counsel or to proceed by summary court-martial without counsel to the

---

[22] It does seem to me, however, that the serviceman's "option" of subjecting himself to the possibility of a special court-martial lends little support to the Court's due process analysis. We held in *In re Gault*, 387 U. S. 1 (1967)—a decision left unmentioned in the Court's treatment of the Fifth Amendment question—that, as a matter of due process accused offenders have an absolute right to counsel at juvenile delinquency proceedings. Surely that holding would be no different in the case of a juvenile given the opportunity "voluntarily" to subject himself to adult criminal proceedings, in which he would have counsel, but at which he would be subject to harsher punishment.

decision faced by a civilian defendant whether to proceed to trial or plead guilty to a lesser included offense. According to the Court, the right given up by such a civilian defendant is "not only his right to counsel but his right to any trial at all." *Ante,* at 47. The analogy is a flawed one. The civilian defendant who pleads guilty *necessarily* gives up whatever rights he might thereafter have been accorded to enable him to protect a claim of innocence; the conditions on his pleading guilty are logically mandated ones. By contrast, the condition on the military defendant's opting to be tried by summary court-martial—*i. e.,* the denial of counsel— is an imposed one, and must therefore be viewed with suspicion.

Indeed, the force of the Court's analogy is entirely dissipated by the fact that a civilian defendant who pleads guilty forfeits only so much of his right to counsel as is a necessary consequence of his plea. He is fully entitled to counsel in the process leading up to the plea— including negotiations with the Government as to the possibility of a plea and the actual decision to plead. The defendant is also entitled to counsel in any sentencing proceeding that might follow the making of his plea. I have no doubt that a scheme in which the acceptance of guilty pleas was conditioned on a full abandonment of the right to counsel would be unconstitutional.

By contrast, the Court today approves the denial of counsel to the summary court-martial defendant at all stages and for all purposes—including, at least as regards sailors and marines,[23] the very decision whether to reject

---

[23] Neither the UCMJ nor the MCM contains any indication that a serviceman must be provided with counsel to assist him in making his determination as to whether to consent or object to trial by summary court-martial. While internal Army guidelines do appear to allow consultation with counsel in making this determination, see Military Justice Handbook, Guide for Summary Court-Martial Trial

trial by summary court-martial. And if the accused opts for the summary court-martial—the Court's parallel to the accepted guilty plea—he has no right to counsel either at the adjudicative or sentencing phase of the proceeding.[24]

Conditioning the provision of counsel on a defendant's subjecting himself to the risk of additional punishment suffers from the same defect as the scheme disapproved by the Court in *United States* v. *Jackson*, 390 U. S. 570 (1968), in which the right to a trial by jury was conditioned on a defendant's subjecting himself to the possibility of capital punishment. If the Court's analysis is correct as applied to the Sixth Amendment, then *Argersinger's* guarantee of counsel for the trial of any offense carrying with it the potential of imprisonment could be reduced to a nullity; a State could constitutionally establish two levels of imprisonment for the same offense—a lower tier for defendants who are willing to proceed to trial without counsel, and a higher one for those who insist on having the assistance of counsel.[25] It

---

Procedure 3–3 to 3–5, Department of the Army Pamphlet No. 27–7 (1973), Navy guidelines contain no such provision.

[24] Assuming the "option scheme" presents the serviceman with any sort of realistic choice, its availability also substantially undercuts the federal parties' military-necessity argument. See *supra*, at 63–69. The federal parties argue that as a matter of "military necessity" minor offenses must be disposed of at summary court-martial proceedings without giving defendants the benefit of counsel. Yet, under the option scheme *any* serviceman can be assured of counsel simply by rejecting trial by summary court-martial. Thus the scheme itself could render unattainable a goal which is claimed to be a matter of military necessity.

[25] While we sustained the Kentucky two-tier system against due process and double jeopardy attacks in *Colten* v. *Kentucky*, 407 U. S. 104 (1972), we were careful to note that under that system a defendant "cannot, and will not, face the realistic threat of a prison sentence in the inferior court without having the help of counsel." *Id.*, at 119.

is inconceivable to me that the Sixth Amendment would tolerate such a result.

## IV

The right to counsel has been termed "the most pervasive"[26] of all the rights accorded an accused. As a result of the Court's action today, of all accused persons protected by the United States Constitution—federal defendants and state defendants, juveniles and adults, civilians and soldiers—only those enlisted men[27] tried by summary court-martial can be imprisoned without having been accorded the right to counsel. I would have expected that such a result would have been based on justifications far more substantial than those relied on by the Court. I respectfully dissent.

---

[26] Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956).

[27] Officers are not subject to summary courts-martial. 10 U. S. C. § 820.