**UNITED STATES**

v.

**Darrell E. KING, Seaman Apprentice, U.S. Coast Guard.**

**CGCMS 23194.**

**Docket No. 794.**

U. S. Coast Guard Court of Military Review.

Sentence Adjudged 13 May 1975.

Decided 26 July 1976.

**OPINION OF THE COURT**

ROSENWASSER, Chief Judge:

Appellant challenges the constitutionality of Seaman Apprentice King's trial by court-martial, asserting that Congress was without constitutional authority to include the Coast Guard as an "armed force" in the Uniform Code of Military Justice.

The authority of Congress under Article I, Section 8, clause 14 of the United States Constitution to "make Rules for the Government and Regulation of the land and naval forces," and thus to enact a uniform code of military justice, is acknowledged,

but the status of the Coast Guard as an armed force is not. Appellant asserts that "the case law makes explicit . . . that an armed force is not merely an organization which on occasion might engage in combat and combat training but rather one whose *primary* mission is combat." Since military readiness and national defense are not the only "primary duties" of the Coast Guard (see 14 U.S.C. § 2), it is argued, the Coast Guard cannot qualify as an armed force and Congress' attempt to include the Coast Guard within the UCMJ and vest court-martial jurisdiction in the Coast Guard is beyond the constitutional power granted in Article I, Section 8, clause 14.

The keystone of appellant's argument is this dictum from *Toth v. Quarles,* 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955):

> (I)t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise.

Appellant points out that the dictum was quoted more recently in *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) and in *Schlesinger v. Councilman,* 420 U.S. 738, 757, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). We note that it was again quoted in two opinions released on 24 March 1976, *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 and *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 1293, 47 L.Ed.2d 356.

In no case, however, has the Supreme Court or, any court, ever held that in order to constitute an armed force, an organization must have as its single primary mission "to fight or be ready to fight." In *Toth v. Quarles,* the issue before the Court was whether a civilian who was an ex-serviceman had remained subject to court-martial jurisdiction. In *Parker v. Levy,* the issue concerned the legality of an Army officer's conviction for disobeying an order to set up a training program for Special Forces personnel and for issuing certain public statements. In upholding Dr. Levy's court-martial conviction, Mr. Justice Rehnquist made

the point that the military is by necessity "a specialized society separate from civilian society," and that the differences between the two result from the fact that "it is the primary business of armies and navies to fight . . .". In *Schlesinger v. Councilman* the issue was the propriety of a federal district court enjoining a trial by court-martial. In *Greer v. Spock* the question involved the constitutionality of a Fort Dix regulation banning partisan political demonstrations; in *Middendorf v. Henry* the issue was whether the constitution required counsel for a summary court-martial defendant.

None of the above cases, nor any of the other cases which have cited or quoted *Toth v. Quarles,* stands for the proposition asserted by appellant.

The essential question we have to determine here is whether a rational constitutional basis existed for Congress to have treated the Coast Guard as a part of the land and naval forces of the United States when it enacted the Uniform Code of Military Justice.[1]

As stated in the Preamble, one of the purposes of the Constitution was to "provide for the common Defence." To further this objective, Article I, Section 8, clause 1, empowers Congress "and provide for the common Defence and general Welfare"; clauses 12, 13 and 14, grant powers "to raise and support Armies"; "to provide and maintain a Navy"; and "to make Rules for the Government and Regulation of the land and naval Forces." Clause 18 grants the power "to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers." In Article IV, Section 4, the United States guarantees to every state a republican form of government and undertakes to "protect each of them against Invasion." Of these provisions of the Constitution it has been aptly said:

> . Thus, the Constitution expresses clearly the thoughts that the life of the Nation

---

1. The Act of 5 May 1950 establishing the Uniform Code of Military Justice was entitled:

 An act to unify, consolidate, revise and codify the Articles of War, the Articles for the Government of the Navy, and the disciplinary laws of the Coast Guard, and to enact and establish a Uniform Code of Military Justice.

and of the States and the liberties and welfare of their citizens are to be preserved and that they are to have the protection of armed forces raised and maintained by the United States with power in Congress to pass all necessary and proper laws to raise, maintain and govern such forces.

—*Dunne v. United States*, 138 F.2d 137, 140 (CCA 8, 1943).

And the Supreme Court has said:

Every resource within the ambit of sovereign power is subject to use for the national defense.

—*Silesian-American Corp. v. Clark*, 332 U.S. 469, 476, 68 S.Ct. 179, 182, 92 L.Ed. 81 (1947).

The powers of Congress with regard to the national defense are plenary and embrace its every phase; the power to safeguard the nation and to protect its shores is virtually limitless.

In 1915 Congress established the Coast Guard in place of the Revenue Cutter Service and the Life-Saving Service and declared that it "shall constitute a part of the military forces of the United States." Act of 28 January 1915, 38 Stat. 800. Although the same statutory recognition had not been accorded to the Revenue Cutter Service, the legislation of Congress had "gone far to characterize it as a military service." 30 Op.Atty.Gen. 75 (1913). For example, The Act of 26 May 1906 (34 Stat. 200) entitled "An act to regulate enlistments and punishments in the United States Revenue Cutter Service," provided not only for commanding officer's punishments but also for trials by courts which were to "be governed in their organization and procedure substantially in accordance with naval courts."

The 1915 declaration that the Coast Guard constituted "a part of the military forces of the United States" was amended in 1941 to make a more definite and certain statement of its status—one that could not be misunderstood. The Act of 11 July 1941 (55 Stat. 585) stated that the Coast Guard shall be a military service and constitute a branch of the land and naval forces of · the United States at all times.

In 1949, when Title 14 U.S.C. was revised and enacted into positive law, "armed forces" was substituted for "land and naval forces." See 14 U.S.C. § 1.

Thus a legislative judgment as to the status of the Coast Guard was rendered by the Congress three times prior to the enactment of the Uniform Code of Military Justice. And in 1956 when Title 10 of the U.S. Code was codified and enacted into law, the judgment of Congress on this matter was expressed in the simple definition in section 101:

(4) "Armed forces" means the Army, Navy, Air Force, Marine Corps and Coast Guard.

It cannot be doubted that the repeated legislative determinations by Congress were within the scope of its constitutional powers. Its judgment that the Coast Guard shall be and is an armed force is binding on this court, unless it can be demonstrated that there was no rational basis for it. Facts within the sphere of judicial notice support the Congressional pronouncement; and the appellant has failed to show otherwise. On its face and presumptively, the inclusion of the Coast Guard in the Uniform Code of Military Justice was a valid exercise of the legislative power and consistent with due process of law.

 The accused herein was tried by military judge alone and found guilty, after pleas of not guilty, of an AWOL of approximately four months and of missing the movement of his ship through neglect. He had one previous conviction by special court-martial and one by summary court-martial; and there were four instances of non-judicial punishment. The sentence as approved on review below consists of reduction to pay grade E-1 and a bad conduct discharge. We have considered the contention that a bad conduct discharge is not appropriate, but do not accept it.

Pursuant to Article 66(c) UCMJ, 10 U.S.C. § 866(c), the findings and sentence are affirmed.

Judges MAGUIRE, YOUNG, BRIDGMAN and LYNCH concur.